GROVER A. SHERMAN *et al. vs.*
THEODORE F. GOLOSKIE *et al.*
THEODORE F. GOLOSKIE *et al. vs.*
GROVER A. SHERMAN *et al.*

FEBRUARY 11, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. These are two suits in equity brought to enjoin the respondents named therein from trespassing on certain land lying along the westerly shore of a body of water known as the Ponagansett Reservoir located in the town of Glocester. The first suit was brought by Grover A. Sherman and others as complainants, who averred therein that record title to the land was in them. The respondents therein, Theodore F. Goloskie and others, by

way of answer and cross-bill denied title in the complainants and claimed title in themselves by reason of adverse possession. The second suit was brought by said Theodore F. Goloskie, a respondent in the first suit, who averred therein his ownership of land which included the land referred to in the original bill. The suits were heard together by a justice of the superior court sitting in equity, who thereafter found that complainant Sherman had acquired title to the land set out in his bill by deed in 1959 and that Goloskie, a respondent therein, had failed to establish adverse possession sufficient to establish his title thereto. In the second suit the trial justice found that Goloskie, as the complainant, had likewise failed to establish title by adverse possession. A decree was thereafter entered in each suit. In the first suit the prayer of complainants for injunctive relief was granted and the cross-bill was denied and dismissed. The decree entered in the second suit denied and dismissed the bill of complaint. An appeal has been prosecuted from the decree entered in each case by Goloskie, who will hereinafter be referred to as the appellant.

There is in evidence a deed dated February 16, 1959 executed by Clarence Smith and his wife, which purports to convey to Grover A. Sherman and his wife a parcel of land in the town of Glocester described therein by metes and bounds and identified as the "Potter Lot." The record also includes testimony of Grover A. Sherman, hereinafter referred to as the appellee, as well as the testimony of other witnesses, among the latter being a surveyor and an expert in the examination of land titles. The substance of their testimony is that the land that is conveyed in the deed to which reference is made above is located in the town of Glocester along the westerly shore of the Ponagansett Reservoir and lying south of and bounded on the north by Snake Hill Road and bounded, in part.

at least, on the west by a road identified as Dark Swamp Road.

In his bill of complaint appellant alleges that he is the owner of a parcel of land which he describes therein by metes and bounds. He further alleges that this land lies to the south of Snake Hill Road and along the westerly shore of the Ponagansett Reservoir and that it is bounded on the west by the Dark Swamp Road. The appellant contends both in his bill of complaint and in the cross-bill that the land which is described in appellee's bill of complaint as having been conveyed to him by Smith is not land that lies to the south of Snake Hill Road and between the reservoir and Dark Swamp Road. He further alleges in the alternate that if the deed does refer to such land, he, appellant, had acquired title thereto by adverse possession.

The deed from Smith to Sherman is ambiguous in that it does not reveal clearly that the Potter Lot, which it purports to convey by metes and bounds, lies to the south of Snake Hill Road and west of the reservoir. Where a deed is ambiguous in this respect, it is settled that the location of the premises to which the deed refers may be shown by extrinsic evidence. In *Hofer* v. *Carino*, 4 N. J. 244, in considering such a deed, it was said: "* * * and a question of location, or of the application of the grant to its proper subject matter, is a question of fact to be determined by the jury by the aid of extrinsic evidence." See *Co-operative Building Bank* v. *Hawkins*, 30 R. I. 171, 187.

The trial justice, in substance, found that the Potter Lot, to which reference is made in the Smith deed, is located to the south of Snake Hill Road, abuts on the westerly shore of the reservoir, and that record title thereto was in appellee Sherman. The appellant contends that such finding of the trial justice constituted error. We are unable to agree with this contention. The validity of appellee's title to the land that the Smith deed purports

to convey is not disputed, and if it is true that the land to which that deed refers, namely, the Potter Lot, is the land south of Snake Hill Road and west of the reservoir, appellee has a good record title thereto.

As we have already noted, there is in the record evidence tending to establish the location of the Potter Lot as south of the Snake Hill Road and as included in a large parcel south of that road and west of the reservoir to which appellant claims title. Evidence adduced on behalf of appellant for the purpose of establishing the location of the Potter Lot or the land conveyed in the Smith deed as being north of Snake Hill Road is vague and confused. However, if we concede that there is some conflict in the evidence on this issue, the question then is whether the trial justice erred in finding as he did on the conflicting evidence.

It is well settled that in the trial of equity causes findings made by the trial justice therein on conflicting evidence are entitled to substantial weight and on review will not be disturbed by this court unless clearly wrong. *Walther* v. *McOsker,* 87 R. I. 386. It does not appear from a close examination of the record that the trial justice either overlooked or misconceived any material evidence on this issue. Such an examination has persuaded us that credibility in the instant situation is important. Here the evidence is being adduced to locate a particular parcel of land in a sparsely settled and heavily wooded rural area. The weight to be given testimony on this issue would depend in great measure on the opportunity of the witnesses to have acquired knowledge as to the location of the Potter Lot. In this respect the trial justice had the advantage of seeing and hearing the witnesses and of evaluating credibility and entitlement to weight. We do not have that advantage and, therefore, in all the circumstances are constrained to conclude that the trial justice was not clearly wrong. *Graziano* v. *Graziano,* 81 R. I. 215.

462

The appellant contends also that the trial justice erred in finding that he had not acquired title to the land under consideration by adverse possession as is provided for in G. L. 1956, §34-7-1. The trial justice, in substance at least, made two findings as to appellant's failure to establish that he had acquired title to such land by adverse possession. In the cause in which appellee Sherman was complainant, the trial justice's finding of a failure to establish acquisition of title by adverse possession had application only to that land described as the Potter Lot, which was the parcel that constituted the subject matter of that bill.

The question of his acquiring title to the Potter Lot by adverse possession was put into issue by appellant's answer to the bill. He attempted also, however, to put into issue in that suit his claim to have acquired title by adverse possession to land which adjoins the Potter Lot. This was an improper use of the cross-bill, the office of which is to obtain for a respondent affirmative relief in the cause stated in the original bill. *Paine* v. *Sackett,* 25 R. I. 561. In the cross-bill appellant sought to introduce a new and distinct matter that was not within the scope of the orginal bill and was not necessary for the making of a complete determination of the matter raised by the original bill. The new and distinct matter was the question of appellant's acquisition of title by adverse possession to land that was not included in the land set out in the original bill. See *Security Trust Co.* v. *Cooling,* 26 Del. Ch. 368, and *McAnarney* v. *Lembeck,* 97 N.J. Eq. 361.

The appellant, as complainant, did allege in his bill that he had acquired title by adverse possession to certain lands described therein as adjoining the Potter Lot as well as that lot. The appellee, as respondent in that suit, in his answer disclaimed any interest in the land described in that bill other than the Potter Lot. By so pleading the parties, in our opinion, framed an issue relating to ap-

pellant's claim of title to the Potter Lot by adverse possession and eliminated as an issue his claim of title by adverse possession to land outside of the Potter Lot. Courts of equity will not ordinarily undertake to try title to land on a mere claim that title thereto was acquired by adverse possession. It will sometimes, however, do this where the parties frame that precise issue and the respondent does not object. *Talbot* v. *Town of Little Compton,* 52 R. I. 280. It is our opinion that the pleadings here indicate that the parties have framed that precise issue. In such circumstance the trial justice properly heard both cases, in each of which the identical issue was being tried.

A substantial mass of evidence was adduced by appellant in support of his claim to title by adverse possession. He testified that he had entered into the land in question with the intention of taking possession thereof in late 1941, prior to the time that he had acquired title to a large parcel of land lying north of Snake Hill Road known as the "Saunders Farm," which was deeded to him by a deed dated December 6, 1943. According to his testimony, from 1941 to 1959 he continuously engaged in acts of dominion over the land. These acts included his own use of the land for hunting, fishing, and wood cutting and taking berries and fruits. He also rented campsites on the land and collected rent from the tenants thereof. He further testified that over the years in the summer and fall he had patrolled the land as often as four times a week and that during those years he had kept the land posted. Although the posting signs were frequently destroyed, he testified that he replaced them at frequent intervals, that he frequently ordered trespassers to leave the land, and that on occasions he had sought the assistance of state conservation officers to prevent trespassers from hunting and fishing on the land. It is clear from the record that his testimony in these respects was corro-

borated in considerable detail by a number of witnesses, among whom were those people who had rented campsites on the land and had obtained his permission to hunt and fish thereon.

An abundance of evidence was also adduced on behalf of appellee tending to contradict that of appellant as to his exercise of dominion over the land under consideration. The appellee himself testified at great length concerning appellant's conduct with respect to this land and particularly with respect to the Potter Lot. This evidence in some measure was contradictory of appellant's evidence concerning his acts of dominion, but it was particularly contradictory of appellant's contentions concerning his acts of dominion on the Potter Lot. Substantial evidence was adduced for the purpose of showing that several of the campsites concerning the rental of which appellant testified in fact were not on the Potter Lot but on land north of Snake Hill Road. The appellee's testimony was corroborated by a number of witnesses, many of whom testified that they had been familiar with the land and appellant's doings thereon for many years. It does, however, appear from the record that some of the evidence adduced in appellee's behalf has a tendency to corroborate appellant's testimony as to the acts of dominion he exercised on the property and this particularly with respect to such acts on those portions of the land in question lying outside of the Potter Lot.

The record here makes it clear that the evidence bearing on the issue of adverse possession was in a direct and substantial conflict. The state of the evidence adduced by appellant is such as to be probative of the actual, open, notorious, and continuous possession that must be shown to establish adverse possession sufficient for the acquisition of title. It is equally clear that in this circumstance the question of credibility is of great importance as is the matter of the weight to be given to the testimony of the

individual witnesses as it relates to the opportunity they had to acquire knowledge as to that to which they testified. In short, the trial justice, confronted with a mass of conflicting evidence on the issue of adverse possession, was duty bound to determine therefrom, on the basis of credibility and weight, whether appellant did exercise a dominion over the land in question that was sufficient in law to constitute adverse possession.

In this state title to land may be acquired by adverse possession where one "shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands * * * for and during the said time, claiming the same as his, her or their proper, sole, and rightful estate in fee simple * * * ." G. L. 1956, §34-7-1. To acquire title to land pursuant to this statute, a claimant must prove actual possession of the property claimed and acts of dominion over that property that will be sufficient in law to vest title thereto in him. *Dodge* v. *Lavin,* 34 R. I. 514. Basically, the statute requires that possession be demonstrated by acts of dominion that are consistent with those which an owner would ordinarily exercise over his own property and which make manifest, so far as the nature of the land permits, his intention to use it as his own. The possession and concomitant exercise of dominion must also have a continuity that is sufficient to acquaint an owner of the land claimed that the claim of title contrary to his own is being asserted by the claimant. *Dodge* v. *Lavin,* 34 R. I. 409, 415.

The rule generally accepted is that the possession required to acquire title under this statute must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive. *Hibbard* v. *Robert G. Fromkin Woolen Corp.,* 156 Me. 433; *Baton* v. *Potvin,* 141 Conn. 198. The concept of acquiring title by the adverse possession of the land of another is stated clearly in *Marvel* v. *Barley Mill Road Homes, Inc.,* 34 Del. Ch. 417. In that case the court said at page

422: "It may be stated as a general rule that the claimants' possession must be such as to indicate their exclusive ownership of the property. Not only must his possession be without subserviency to, or recognition of, the title of the true owner, but it must be hostile thereto, and to the whole world. * * * No particular act or series of acts is necessary to demonstrate an intention to claim ownership. Such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner. The owner is, of course, chargeable with knowledge of what is openly done on his land and therefore calculated to attract attention."

Where, as in the instant case, the land under consideration is wild land or remote, unimproved rural land, the courts take the view generally that if the possession has been maintained in the manner in which owners of like land in similar locations make use thereof, it will suffice. In other words, where the land in question is of such a character as to preclude actual occupation or intensified use thereof, the requisite possession may be shown absent those uses. Basically, the test is that the use to which the land has been put is similar to that which would be made ordinarily of like land by the owners thereof. In this respect it was said in *Goen* v. *Sansbury*, 219 Md. 289, at page 296: "It is true that in determining whether there has been actual possession of property, there must be considered its character and locality, and the uses and purposes for which it is naturally adapted, since possessory acts of an outlying and uncultivated piece of land may be proved by acts of ownership somewhat different from those required with regard to land under enclosure and actual cultivation."

In the instant case the trial justice found that the acts of dominion upon which appellant relied to establish the required adverse possession were neither hostile nor notorious. This was to find, in effect, that the acts so relied upon

were not sufficient to manifest an intent to oust the true owner thereof and were not so open and continuous as to put the true owner on notice of the claim of ownership adverse to his own title.

An examination of the record here reveals evidence tending to prove that appellant had been entering upon land south of Snake Hill Road and using it in varied ways since the early forties. This is particularly clear with respect to those acts of dominion which he performed on those portions of the land claimed by him which are not included within the Potter Lot. There is, however, a substantial conflict in the evidence that relates to the acts of dominion which appellant performed on the Potter Lot, title to which is in issue in each case.

The burden was upon appellant to establish that he had exercised an open, notorious, and continuous dominion over the land constituting the Potter Lot. As the trial justice noted, the burden of proof in these cases requires strict proof as this court said in *Day* v. *Proprietors of Swan Point Cemetery,* 51 R. I. 213. It cannot be reasonably disputed that to acquire title to land by virtue of possession for the statutory period that is adverse to the true owner thereof should be a matter requiring strict proof. In our opinion the term "strict proof" means proof by a preponderance of the clear and positive evidence. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690. It is for the trial justice then, as this court noted in *Dodge* v. *Lavin,* 34 R. I. 514, to determine from all the evidence whether the appellant has sustained the burden imposed upon him of proving his possession of the land to which he lays claim by a preponderance of the clear and positive evidence.

We are again confronted with a situation which calls for an application of our well-settled rule concerning the weight to be given to the findings of a trial justice sitting in equity on conflicting evidence. We do not perceive, nor has appellant persuaded us, that the trial justice either overlooked

or misconceived evidence material to the pertinent issue. Further, the trial justice had the advantage of seeing and hearing these witnesses as they testified, an advantage which enabled him to evaluate the weight to which their testimony was entitled. In these circumstances we cannot say that the trial justice was clearly wrong in finding as he did.

The appellant in his brief argues certain exceptions to evidentiary rulings made by the trial justice. The appellee contends that these matters are not before this court for review on the ground that they were not made the subject matter of a reason of appeal by the appellant. Because of the involved nature of these causes, we have undertaken to examine such exceptions as if they were properly here by reasons of appeal and, having done so, we find that in no case was prejudicial error committed by the trial justice in ruling as he did. For that reason we hold that these purported exceptions, if properly before us, would be without merit.

In each case the appellants' appeal is denied and dismissed, the decree appealed from is affirmed, and each cause is remanded to the superior court for further proceedings.

### On Motion for Reargument.

#### FEBRUARY 25, 1963.

PER CURIAM. After our decision in the above causes was filed, the appellant Theodore F. Goloskie was granted permission to present a motion for reargument. Pursuant thereto he has filed such a motion setting out therein the particular reasons on which he bases his contention that justice requires a reargument of the causes.

We have carefully considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr., John P. Cooney, III,* for appellees Grover A. Sherman et al.

*Max Levin,* for appellants Theodore F. Goloskie et al.