William H. HILLEY et al.

v.

Virginia U. SIMMLER.

No. 80–336–Appeal.

Supreme Court of Rhode Island.

July 19, 1983.

Jeremiah R. Leary, Tiverton, for plaintiffs.

John F. Cuzzone, Jr., Providence, for defendant.

OPINION

BEVILACQUA, Chief Justice.

The plaintiffs, William and Toni Hilley (the Hilleys), filed a complaint against the defendant, Virginia Simmler (Simmler), seeking injunctive and declaratory relief concerning ownership of a triangular-shaped piece of land. Thereafter, Simmler filed a complaint alleging adverse possession of the land in dispute. At trial, the trial justice consolidated that action with the plaintiffs' action. After a nonjury trial, the trial justice held that Simmler had established an adverse claim to part of the land in dispute. Simmler now appeals from the judgment below.

The Hilleys and Simmler own adjoining properties at 269 and 273 Riverside Drive in Tiverton. (See attached maps.) Simmler acquired her parcel in 1968 and the Hilleys acquired their parcel in 1970. Both parcels have houses on them and are bounded on the northwest side by the Sakonnet River. A dispute arose between the parties concerning the ownership and control of a triangular-shaped piece of land between the two properties.

The parties' respective predecessors in title sowed the seeds for the present dispute by failing to observe the actual boundary line between the properties. A survey of the true boundary line established that the Hilleys owned all of the triangular-shaped parcel of land in dispute. In fact, the northwest portion of the Simmler house encroaches on what was the Hilleys' property. Because neither of the parties, nor their predecessors in title, observed the actual boundary, various improvements—fences, landfill, retaining walls, and walkways—were made on the triangular-shaped area.

The dispositive testimony at trial was given by George Dixon. Dixon stated that he had lived with his parents on the Simmler property from 1925 to 1940. From 1940 through 1962 he had returned regularly to visit them there. He testified that he and his father at one time erected a wooden

picket fence that separated the two properties. That fence began at Riverside Drive and continued for approximately thirty feet between the properties until it ended at a dock post located at the water's edge. The dock post marked the beginning of a dock that his father constructed in 1930. (In 1930 part of the Dixon house extended over the Sakonnet River.) Dixon deposed that the dock was originally four feet wide and extended from the edge of the water at the dock post and ran parallel and adjacent to the southwest side of the house to the end of the house. He stated that in 1932 or 1933 a seawall was constructed on the river side of the house and landfill was used to extend the property out into the Sakonnet River. Thereafter, Dixon deposed that his father had built an extension to the existing dock because the seawall made the dock useless. The dock extension abutted the seawall and continued over the water to a point three feet from the end of the seawall. Dixon testified that the dock extension continued in the same line as the old dock, that is, parallel to the house, but that it also abutted the seawall. Thus, Dixon avowed that whereas the width of the old dock at the side of the house was four feet, the width of the dock extension near the end of the seawall was eight to nine feet.

Dixon testified that the dock was taken down and rebuilt numerous times because of ice on the river. He stated that 1938 was the last year the dock was reconstructed and that it remained up at least until 1950, in which year the dock was depicted in a photograph introduced into evidence as defendant's exhibit P. Dixon deposed that he did not know if the dock was present when Simmler purchased the property. Eventually the area where the dock had been was covered with landfill.

▮ The trial justice issued a bench decision in which he held that Simmler had established by strict proof part of her claim of adverse possession. He determined that Simmler's predecessors in title had acquired title to part of the triangular-shaped piece of property through actual, open, notorious, hostile possession, under a claim of right, continuously and exclusively from 1938 to 1950. The trial justice stated that the parties and their predecessors in title had recognized the thirty-two-foot-fence that extended northwest between their properties as a boundary line. Thus, he held that Simmler was entitled to the land on the northeastern side of this line as a result of adverse possession. Additionally, the trial justice found that at the point where the original fence ended Simmler had proved an adverse claim to a cement walkway three feet wide adjacent to her southwestern house wall and continuing three feet in front of her northwest house wall. Moreover, he held that beyond the end of the cement walk Simmler had established an adverse claim to a strip of land four feet wide and adjacent to the southwest seawall from the northwestern end of her house out to the water. This area was determined by the trial justice to be the one where the dock extension had once stood.

The trial justice entered a judgment embodying his bench decision that included a new metes and bounds description of Simmler's property.

Simmler does not contest the trial justice's decision concerning the boundary line demarcated by the original fence to a point thirty-two feet northwesterly from Riverside Drive. She asserts that the trial justice misconceived material evidence in finding that the three-foot-wide cement walkway, apparently constructed by her predecessors in title, became the line of demarcation for her claim of adverse possession. Simmler contends that the testimony established that the old dock post that was at the end of the old fence and the current stockade fence marked the beginning of the four-foot-wide dock. She argues that this evidence confirmed the existence of an area of adverse possession, beginning from that point and continuing in a line parallel to the southwest side of the house until the end of the dock extension that was much larger than the narrow four-foot strip of dock which the trial justice found.

The law concerning the elements of adverse possession is clear and not in dispute. To acquire title to land by adverse possession, a claimant must be "in the uninterrupted, quiet, peaceful and actual seisin and possession of [the land] * * * " for a period of ten years. G.L.1956 (1969 Reenactment) § 34–7–1. The adverse nature of the possession must be actual, open, notorious, hostile, under a claim of right, continuous, and exclusive. *E.g., Sherman v. Goloskie,* 95 R.I. 457, 465, 188 A.2d 79, 83 (1963). A claimant must establish each element of possession by strict proof, that is, proof by a preponderance of clear and positive evidence or by evidence that is unambiguous and affirmative in character. *E.g., Martineau v. King,* 120 R.I. 265, 268, 386 A.2d 1117, 1119 (1978). Moreover, findings of fact of a trial justice sitting without a jury are entitled to great weight and will not be overturned unless his or her factual findings are clearly wrong or unless he or she overlooked or misconceived material evidence. *E.g., Sherman v. Goloskie,* 95 R.I. at 461, 188 A.2d at 81.

■ The evidence adduced at trial established that when Simmler purchased the house and property in 1968, four steps that began at the end of the wooden fence descended to a cement walkway. The walkway continued along the southwestern side of the house and went out around the corner of the river side of the house. However, there was no testimony regarding when the cement walkway was first installed. Moreover, the significance of the cement walkway as a line of demarcation is questionable in light of the trial justice's determination that Simmler had established her claim of adverse possession from 1938 to 1950.

In fact, the photograph marked defendant's exhibit P indicates that in 1950 the dock was located at the base of the four steps—steps that began at the end of the wooden fence—and extended out beyond the house along the seawall. Because the trial justice held that Simmler had established her claim of adverse possession from 1938 to 1950, part of the boundary line for her adverse claim should have been established by the location of the steps and the dock. Thus, the trial justice's reliance on the cement walkway constituted a misconception of material evidence.

Our final concern is the width of the dock. The trial justice found that after the cement walkway turned the corner of the house, a four-foot-wide dock continued alongside the seawall out to the river. The dock location was used by the trial justice as the line of demarcation for the northwestern boundary between the properties.

Dixon's testimony, although at times less than clear, unambiguously established that the dock began at the dock post—the dock post was still in existence at the time of trial—and continued at a width of four feet and parallel to the side of the house until the house ended. A dock extension was built onto the original dock. The dock then extended thirty to thirty-five feet in length and was in existence, at the least, from 1938 until 1950. Dixon's testimony further established that the northeast side of the dock extension abutted the seawall and that the southwest side of the dock extended in a line "parallel" to the old dock. A photograph marked defendant's exhibit P depicts the dock extension abutting the seawall and the extension as wider than the old dock. Thus, he stated that the dock, although four feet wide at its base, was eight to nine feet at the water's edge. The evidence confirms that the northeast edge of the dock did abut the seawall and that the southwest edge of the dock extended away from the wall at an oblique angle. The configuration of the dock was irregular, four feet wide at its base and eight or nine feet near the water's edge. The dock had extended to a point three feet from the end of the seawall. Therefore, the trial justice misconceived material evidence in finding that the entire dock extension was four feet wide and that the dock extended to the water's edge.

The defendant's appeal is sustained in part, and the case is remanded to the Superior Court for further factual findings con-

cerning the width of the dock extension. The Superior Court should then enter an amendment of the judgment below extending the boundary of the defendant's adverse claim as demarcated by the four-foot-wide dock that existed from the dock post to the southwest corner of the house and by the width of the dock extension that continued to a point three feet from the end of the seawall.

8'-9'

← Seawall

dock extension

)⁻ map depicts location of old dock and dock extension as it should have been found by the trial justice.

original dock

Dock Post →

Fence

Simmler

32'

Hilley

Stockade

not drawn to scale

area awarded to Simmler and not in dispute

Riverside Drive