**AUD–WAR REALTY CO., INC.**

v.

**Elisha G. ELLIS et al.**

**No. 87–553–Appeal.**

Supreme Court of Rhode Island.

April 12, 1989.

John S. DiBona, Cranston, for plaintiff.

John D. Lynch, Lynch, McKiernan & Costello, Warwick, for defendants.

1. See Appendix A.

2. In *Robidoux v. Pelletier,* 120 R.I. 425, 438 n.2, 391 A.2d 1150, 1157 n.2 (1978), we noted that a

**OPINION**

KELLEHER, Justice.

The critical issue in this Superior Court dispute concerns a piece of East Greenwich real estate that measures about one and one-half feet. The plaintiff, Aud–War Realty Co., Inc., initiated this litigation by filing a complaint in which it charged that the defendants were maintaining a continuing trespass on the plaintiff's property. According to the plaintiff, a wooden shack built and maintained by the defendants encroached on its land. As noted earlier, this encroachment measures about a foot and a half. The defendants, Mr. and Mrs. Elisha G. Ellis, denied any encroachment and filed a counterclaim in which they alleged that they acquired title to the disputed portion by adverse possession. The trial justice rejected the defendants' counterclaim and ordered that the shed be removed from the plaintiff's property. Hereafter we shall refer to the plaintiff as Aud–War and to the defendants by their last name, Ellis.

Aud–War's real estate parcel is situated on the westerly side of Water Street and is described as lot Nos. 97 and 98[1] on tax assessor's plat No. 1. The Ellis parcel is situated on the westerly side of High Street and is designated as lot Nos. 111 and 112 on tax assessor's plat No. 1. High Street is a paper street.[2] Water Street, on the other hand, is a public highway that runs along the East Greenwich waterfront.

The topography of Aud–War's lots is deserving of some comment. A surveyor informed the trial justice that lot Nos. 97 and 98 are level as they run in a westerly direction for about thirty feet. At that point, the land takes an upward turn and continues to slope upward until it reaches the easterly side of High Street. The level portion of Aud–War's lots was used for the parking of automobiles and the winter storage of boats.

A surveyor employed by Aud–War described the remaining portion of the two

paper street is a street that appears on a recorded plat but which in actuality has never been opened, prepared for use, or used as a street.

lots as a steep hill, heavily covered with brush, briar, small trees, and junk. The surveyor told the trial justice that in his initial survey in 1978, he observed a small shed that appeared to be something like a playhouse in the vicinity of Aud–War's parcel. However, the shed at that time was not on Aud–War's property. Subsequently, the surveyor returned to the parcel that he had previously surveyed and rechecked the lines. On this occasion he found there was a large shed that was protruding a foot and a half onto lot No. 97 of Aud–War's property. The shed, he said, measured nine square feet and rested on railroad ties. The surveyor also pointed out that the shed could not be seen if one was standing on Water Street.

Mr. Ellis testified that nobody challenged "his right" to use the land at the top of the hill until 1978 when he observed Aud–War's surveying team, which informed him that "the building had to go." He also acknowledged that in several conveyances, High Street was designated as the easterly boundary of his property. In responding to an inquiry posed by the trial justice, Mr. Ellis admitted that the first time he became aware of the exact location of High Street was in 1978 when he encountered Aud–War's surveying team working its way up to the top of the hill. Initially the witness was under the impression that High Street has a width of sixteen feet. The surveyor described the roadway as having a width of thirty-three feet.

In *Hilley v. Simmler*, 463 A.2d 1302, 1304 (R.I.1983), this court once again emphasized that to acquire title to land by adverse possession, (1) a claimant must be in the uninterrupted, quiet, peaceful and actual seisin and possession of the land for a period of ten years; and (2) the nature of the possession must be actual, open, notorious, hostile, under a claim of right, continuous, and exclusive. Each element of that possession must be established by strict proof, that is, proof by clear and convincing evidence, *Gammons v. Caswell*, 447 A.2d 361, 366 (R.I.1982), and the trial justice's factual findings are to be given great weight and will not be overturned unless the findings are clearly wrong or based on a misconception or overlooking of material evidence. *Hilley*, 463 A.2d at 1304.

This litigation was commenced in May 1981. At that point the Ellises assumed the obligation of satisfying the requisites set forth in *Hilley*, to wit, ten continuous years of possession of lot No. 98 that was actual, open, notorious, hostile, under a claim of right, continuous and exclusive. However, at trial Mr. Ellis conceded that he was totally in the dark about the specific location of his easterly boundary and underestimated the width of High Street by seventeen feet. The record indicates that the Ellises first became aware of the location of the easterly boundary in 1978. It is obvious from Mr. Ellis's commendable candor that the Ellises' claim of ten or more years of adverse possession must be rejected because of the inadequacy of its term and the absence of other prerequisites such as adversity, notoriety or a claim of right.

The Ellises' appeal is denied and dismissed. The judgment appealed from is affirmed. The case is remanded to the Superior Court.

APPENDIX A