DECISION
These cases were tried on a consolidated basis pursuant to an order of the Superior Court dated May 28, 1993. The trial was held October 28, 1993 before a judge sitting without a jury in Kent County.
The parties who are plaintiffs in one action and defendants in another, respectively, are James J. Daneker, his wife Antonette M. Daneker and James' mother, Marion E. Daneker. James and Antonette own real estate located at 143 James Street in Warwick, Rhode Island and Marion owns real estate located at 135 James Street immediately adjacent to James and Antonette.
O P Realty and J. Renn Olenn and Joseph Penza are General Partners of O P Realty and maintain offices adjacent to land owned by the Danekers.
The KD/93-436 case was tried before a judge of the District Court as a trespass and ejectment action and, after hearing, the court found for the defendant and dismissed the complaint and the plaintiff appealed to the Superior Court.
KC/93-216 was filed by the plaintiff on March 3, 1993, claiming that the plaintiffs (Danekers) had claimed the land of the defendants' J. Renn Olenn et al in an open, hostile and notorious manner for a period of time in excess of ten (10) years and further that defendant Olenn's predecessor in title had erected a boundary fence which had been recognized as a boundary marker for a period in excess of ten (10) years by both Danekers and Olenn's predecessor in title. The Danekers therefore claim title to the area of land in question by right of adverse possession or, in the alternative, by reason of acquiescence.
Olenn disputes this claim and claims title to the land by deed and on appeal, prays for possession of the land in question via trespass and ejectment.
The Court heard testimony from George and Antonette Daneker, owners of real estate at 143 James Street and from George's mother, Marion Daneker who owns real estate adjacent to George at 135 James Street in Warwick, John D. Lynch, Esquire, counsel for Metropolitan Life Ins. Co., Olenn's predecessor in the and J. Renn Olenn, Esquire, principal in O P Realty and Partner of the law firm Olenn and Penza testified for Olenn as did Michael Lynch, Esquire, a former associate in Olenn's office.
Because of the fact that each party in this consolidated case is both plaintiff and defendant, the parties will be referred to henceforth as Daneker and Olenn.
Danekers have testified that James and Antonette have owned 143 James Street since 1975 and have lived there continuously since their house was built in 1976 to the present. Marion, George's mother, lives adjacent to George at 135 James Street, in the City of Warwick. She and her late husband owned her land since 1975 and built their home in 1976. She resides there and has done so since 1976.
At the time the Danekers moved into their respective homes, the land upon which Olenn now has its offices was vacant. The area was used by the nearby land owners, including the Danekers, as a recreation area for picnics and ballgames.
In late 1976 or early 1977, the Danekers were notified of a requested change in zoning of the then vacant land. This petition was filed by John D. Lynch, Esquire on behalf of the Metropolitan Life Ins. Co. After hearings and meetings at which Danekers, along with other abutters, objected to the zoning change and proposed commercial building, the concerns of the objections were mollified by a reduction in size of the building and an agreement that there would be erected a wooden screening fence to screen the commercial building from abutting land owners (See Ex. #2). As a result the objectors withdrew their objections. The building was constructed in 1977 and the fence erected right after construction was completed.
The Danekers had no "say" in where the fence was to be constructed, there were no gates or access to any abutters' property (including Danekers) and neither the Danekers nor any other abutters paid for the construction of the fence.
George Daneker testified that he used and maintained his side of the fence, changed fence posts and sodded the 12 foot strip in 1981 and then again in 1986 or 1987.
He testified that he removed two oak trees from the strip in 1981 and from the time of the fence's erection, he maintained and mowed the 12 foot strip between the fence and what he knew to be his boundary. He testified that he did all these tasks between 1977 and his notice from Olenn in 1989 (Exhibit 3) and treated the strip of land as his own. He also testified that he maintained the strip on his mother's land as well during that period. George Daneker produced evidence, Ex. 4 and 5, indicating payments to Tuckahoe Farms for lawn care and a bill of August 7, 1981 for fertilizer for the backyard.
On cross examination, George Daneker admitted that when the fence was built he knew it was not his land i.e. the 12 foot strip between the fence and Daneker boundary. He also testified that the fence was erected to provide a privacy screen between the commercial enterprise and the abutting neighbors. He indicated that he waived his objection to the zoning change because the proposed use was better than a McDonalds restaurant or a gas station and the Metropolitan Life was a 9 to 5 operation with no weekend activity.
Daneker admitted he did not own the fence but maintained it as protection for a swimming pool he caused to be erected by him and five friends in the Spring of 1981. The pool was build on his property, without permit or variance and did not encroach on the disputed 12 foot strip.
He testified that in February 1989 he erected a shed on his property which did extend over his deeded boundary line and that this construction occurred prior to his notice from Olenn that Olenn was claiming title to the 12 foot strip behind the fence.
He also testified that the Metropolitan Life entity had maintained the grass on its side of the fence on a regular basis by a landscape crew which was hired for that purpose. The crew did not maintain the strip on Daneker's side of the fence.
Antonette Daneker, wife of James, testified regarding Exhibits 6A through F which were various pictures of the fence and disputed land area.
She testified regarding 6B, a picture of a garden in the 12 foot strip, that the picture was taken in 1987 and 6D, a picture of a tree stump was taken prior to 1987, perhaps in 1981. On cross examination she opined that Exhibit 6A which she had testified was a picture of the fence taken in 1987 was, she said, "90% sure was taken after 1989." Further questioning developed responses that all pictures 6A through 6F were taken after 1989.
She also testified that she had observed a professional landscape crew maintaining the Metropolitan Life side of the fence, but had never seen any maintenance of the 12 foot strip on her side of the fence.
Mrs. Marion E. Daneker, mother of George, testified as to the development of the Metropolitan Life parcel and the construction of the fence in a manner similar to George's testimony. In addition, she too testified that George and her late husband, Norman, until his death, maintained the 12 foot strip and considered it to be their property. She also observed professional landscapers work on the Metropolitan Life side of the fence, but never on her side and otherwise corroborated the testimony of George and Antonette. Exhibit C was introduced to show her backyard.
John D. Lynch testified for Olenn regarding the historical development of the Metropolitan Life property. He represented Pearson Realty before the zoning board for a variance in which Metropolitan Life was a party in interest.
He testified that the construction of the fence was for the purpose of screening the commercial area from the abutting residential area. He indicated that he didn't know exactly where the fence was supposed to be. He recalled it was erected in two stages, approximately one half of its length at a time.
He testified that there was no agreement to give the land to the abutting objectors as consideration for the dropping of the objections.
He testified that he recalled making a suggestion to a Mr. Rothmitch whom he believed to be a Metropolitan Life person to erect the fence so that it could be maintained by Metropolitan Life without going on to the neighbor's property. He testified he knew of no agreement to allow the abutters to use the land on their side of the fence. Nor did he recall any gates or walkways through the fence.
J. Renn Olenn testified that O P Realty purchased the property in September 1988 and moved in on December 8, 1988.
He first learned that the fence was not on the boundary line in April 1989 when he had the land surveyed to landscape the property. He sent letters to the abutting owners (defendant Exhibit A in full) and hand delivered them to meet the neighbors and allay any fears they might have due to a change in ownership and to be neighborly.
He indicated to the abutters that he intended to move the fence back to the legal boundary line.
He testified that he met face to face with all Danekers to see if an accommodation could be made that would restore the fence to his deeded boundary line.
He also expressed concerns to the Danekers that the shed was built right outside of the cafeteria window of his office building and he requested that the shed be moved.
One June 30, 1989, he sent a letter to the Danekers to which he received no response. As a result he began suit.
He also testified that he took the photograph (Exhibit B) in the Fall or Winter of 1990.
On the question of the Daneker pool, he testified that Mr. Daneker told Olenn that he made sure the pool was constructed on his (Danekers) land, and that the fence helped Daneker maintain the safety of the pool. During that conversation, Mr. Daneker made complaints about the lighting from the Olenn building shining on Daneker's property and that the building when constructed in 1977 was 8 feet closer to the Daneker property line than it was supposed to be.
He further testified that despite the communication he had with the Danekers from April 1989 until March 1990, the Danekers made no claim to Olenn that they regarded the land as theirs (Daneker) land and they had acquired it by adverse possession. He testified that he had no notice from the Danekers until March of 1990.
On cross examination Olenn agreed that in 1988 he never asked the Danekers to move the fence. These conversations took place after December 2, 1988 through April 1989. During this period there was no lease or the disputed land between Olenn and the Danekers and no rent collected by Olenn during this period or maintenance of the disputed 12 foot strip on the Daneker's side of the fence, but Olenn maintained the Olenn side of the fence utilizing lawyers in his employ. Olenn also testified that he caused elementary repairs to be made to the fence in the Fall of 88 and Winter of 89.
Michael Lynch, Esquire, a former law associate of Olenn 
Penza, P.C. testified that he was responsible for the clean up and maintenance of the grounds adjacent to the law offices when he was a new associate with Olenn's law firm. Mr. Lynch testified that Mr. Daneker, in a conversation with him, told Mr. Lynch that Daneker had on a prior occasion, forced Olenn's predecessors in title, Metropolitan Life, to fix the stockade fence or he (Daneker) would drag the fence down Route 5 with his truck. This threat by Daneker was made to force Metropolitan Life to fix the fence because it was Metropolitan Life's responsibility to do so. Daneker related, per Lynch's testimony, that the threat was successful and the fence repaired. This occurred at some point prior to Olenn moving into the structure.
To acquire title to land by adverse possession, a claimant must prove actual possession of the property claimed and acts of dominion over the property as required by law (Dodge v. Lavin,34 R.I. 514 (1912).
The generally accepted rule is that possession required to acquire title pursuant to 34-7-1 must be actual, open, notorious hostile, under claim of right, continuous and exclusive. (Shermanv. Goloskie, 95 R.I. 457 (1963).
Each of these elements must be established by strict proof, that is, proof by preponderance of the clear and positive evidence.
The doctrine of acquiescence is invoked when determining whether boundaries marked by physical objects will be given preference over boundary lives described in the recorded title.
Absent evidence of an express agreement between the parties, the party alleging acquiescence must show that the boundary marker existed and that both parties recognized that boundary for a period equal to that prescribed in he statute of limitations re: entry or for a period of ten (10) years.
Locke v. O'Brien, 610 A.2d 552 (R.I. 1992).
I ACQUIESCENCE
Addressing the Daneker's claim of the title acquired by acquiescence, the entire record is devoid of any express agreement between Olenn's predecessor in title, Metropolitan Life and the Danekers, with respect to the fence erected between the properties being recognized as a boundary fence.
There is also not a scintilla of evidence that either Metropolitan Life or the Danekers considered, treated or observed the stockade fence as a boundary mark.
Throughout the testimony of the Danekers is the admission that the fence was erected as a screening device between the properties, and in fact, as a concession by Metropolitan Life to ease the way for the zoning application.
In consideration of the testimony on the record, the claim of the Danekers that the fence between their property and Metropolitan Life Insurance Co's property was a boundary marker must fail for lack of credible evidence. The Court finds as a fact and as a conclusion of law that the fence was not considered a boundary between the parties, either by express agreement, or over the appropriate statutory period required by law. The Court further finds that Olenn, upon completion of the survey of Olenn's property in April of 1989, did not consider the fence to be a boundary marker between the properties.
II CLAIM OF TITLE BY ADVERSE POSSESSION
After a review of the testimony of all parties at trial, the full exhibits entered in the case and after examining the briefs provided by both Daneker and Olenn and reading the authorities cited therein, this Court makes the following findings of fact and conclusions of law.
 That the Danekers have failed in their burden to prove by clear and convincing evidence that the requirements of 34-7-1 have been met by the Danekers. That they have failed to prove open, actual, notorious, hostile, continuous and exclusive, possession of the 12 foot strip of land between the stockade fence and the Danekers deeded property line.
 The Court finds:
 That the testimony of the Danekers is equivocal as to the starting time of their claim of adverse possession against Metropolitan Life Ins. Co. That the record contains no evidence that the claim of the Danekers was ever acknowledged by them to Metropolitan Life Ins. Co. to be open, notorious or adverse to the interests of Metropolitan Life Ins. Co.
 That the claim of the Danekers clearly fails to establish the ten (10) year period required by statute as amplified by existing case law and in accordance with the statute.
 The Court finds as a fact and as a conclusion of law that at some point between the erection of the so-called screening fence and the possession of Olenn of the property as successor in title to Met Life that the Danekers may have formed an intent to extend ownership to the subject property.
 The claim fails however because it has not been established by clear and convincing evidence either as to the time required by law or the conditions required by law to be fulfilled.
 The Danekers have attempted to show their intent and use of the property through their personal testimony, photographic and other tangible evidence offered as exhibits in this case, (lawn care receipts, etc.)
 The photographic evidence particularly is deficient in that, upon cross examination, it was determined that most of the pictures of the subject property were taken after certain repairs were made to the fence in 1990 by Olenn.
 The only picture of the fence predating that time purporting to show continuing maintenance by the Danekers shows a fence in an advanced state of disrepair and directly contradicts the testimony of George Daneker who said he performed the maintenance.
 The erection of the above ground swimming pool by the Danekers, carefully positioned on his side of the legal boundary, the Court finds to be indicative of his lack of desire to exercise dominion or control or continuous use of the subject property. This, coupled with his failure to apply for appropriate permits to erect the pool, raise equitable concerns which strain the credibility of the Danekers in the opinion of this Court.
 If any attempt was being made by the Danekers to fulfill the requirements for a claim of adverse possession in the early 1980's and the record is devoid of competent evidence on that point, this Court finds as a fact and concludes as a matter of law that the placement of the pool right up to and not over the legal boundary line does nothing to enhance that claim and leads the Court to the reasonable inference that Mr. Daneker was well aware that he had no legal right to use the 12 foot strip of property in dispute.
 The Danekers have, in their view, presented uncontroverted evidence as to their uninterrupted use of the subject 12 foot strip from the time it was erected in 1977 through at least 1989.
 This Court respectfully disagrees. The only clear and convincing evidence in this case to in any way demonstrate the Danekers claim of right, openess or hostility to the title of Metro Life was the evidence that two trees on the 12 foot strip were cut down by the Daneker's.
 Their other evidence, testimony, and pictorial of continued use, maintenance, etc., of the subject parcel does not meet the standards of clear and convincing evidence and, if anything, it sheds great double on that claim.
 The statute of adverse possession does not begin to operate until the possession becomes clearly adverse. There has been no showing by clear and convincing evidence as to when this time began.
 The reasonable inferences to be drawn from Daneker's testimony, is that that notion may have developed as late as the conversation between the Danekers and Olenn in 1989 and 1990.
 Equity abhors a forfeiture. Frenning v. Dow, 544 A.2d 145 (R.I. 1988) Hurst v. Full Channel Cable Television, 633 A.2d 264 (R.I. 1993).
If this Court is to make an award of another's real property to one seeking title by adverse possession, this Court must make that finding based upon strict proof, clear and convincing evidence.
This Court finds as a fact and draws as a conclusion of law that the Danekers have failed to conform to that high standard both as to the weight and content of their evidence.
Accordingly, in KC 93-216 this Court will deny the claim of the plaintiffs, the Danekers for title to the 12 foot strip of land in controversy and find for the defendants J. Renn Olenn et al.
In the case of KD 93-436, the Court finds for the plaintiffs,O P Realty v. James J. Daneker et al. and awards possession to the plaintiffs of the subject property plus costs.