DECISION
In this action to quiet title, the parties dispute the ownership of approximately 3.91 acres of land between their two abutting parcels, located in North Smithfield, Rhode Island. The plaintiff, Doris Green (Green), seeks a judgment declaring her ownership. The defendant John Russo (Russo), counterclaims, asserting that he has acquired the subject property in dispute by adverse possession. This matter was heard on April 29, 1999, without the intervention of a jury, and concluded on April 30, 1999. The facts insofar as pertinent follow.
 Travel/Facts
The following facts are undisputed unless otherwise noted. Green owns a family farm and farmhouse located on Old Pound Hill Road in North Smithfield. Green, who is in her eighties, has lived on this farm her entire life and inherited the 85 to 90 acre rural parcel from her parents as their only child. The Green farm continues to operate on a daily basis and has approximately 17 cows on the premises. A neighbor of Green for more than fifty years, Wilfred Branchaud, (Branchaud), helps with the care of the livestock. Other longtime neighbors include Keith Klockers and Leo Branchaud. Green testified that these neighbors were authorized to walk the portion of the disputed property for hunting, woodcutting and other permitted matters on an ongoing basis.
On August 26, 1970, Evelyn J. Russo (the defendant's spouse), purchased a plat of approximately one acre, on Brentwood Drive in North Smithfield, which abuts the Green Farm to the north.[1] On August 16, 1983, Russo applied for, and subsequently received a permit for the construction of a small barn (8'x30'). Russo's daughter testified that the family kept three horses and a pony on their plat since 1983. Also in 1983, Russo erected a ninety-six foot, three rail wooden fence on his own property to separate the barn from the house. Russo claims that in 1983, he and several family members installed an electric fence for their horses, which started on his property, attached to the wooden fence, and continued behind the barn into Green's property.[2] (See Defendant's Exhibits C, D, E, and G).
Green disputes the location of this electric fence on her property since the alleged date of 1983. Green contends that she had walked the disputed property up until 1988 and was not aware of any fence during that time. Additionally, Green and her neighbors, Branchaud and Klockers, testified that trees were cut down in the disputed area in 1988 and that there was not a fence or other impediment observed. Finally, Branchaud and Klockers, who have allegedly walked and/or hunted on the disputed property on a continuing basis for over twenty-five years, testified that there was no fence or obstruction outside the Russo's property prior to 1995.
In June of 1989, Russo purchased the abutting plat to his property, No. 15, which also comprised approximately one acre.[3] In 1993, James Zannolli (Zannolli) purchased Lot No. 13 on Brentwood Drive, which abuts the Russo lot No. 14 on the west. Russo testified that during the summer of 1994, orange plastic fencing material was hung onto the existing electric fence "for the horses to see, or anybody walking through, . . . to see the fence." Zannolli notified Green, by letter, dated August 1, 1994, of the orange plastic fencing assembled on her property. In the latter months of 1995, Green authorized a partial survey of the southerly portion of her property. The final survey was drawn in December of 1995, which showed the Russos' orange plastic fence to be intruding upon approximately 3.91 acres of Green's boundary.
On April 19, 1995, Green filed and served a Notice of Dispute under G.L. 1956 § 34-7-6. She filed a complaint with this Court on September 5, 1996, claiming continuous trespass on her property by Russo in violation of G.L. § 34-20-1 and requesting a declaratory judgment that she is the true and rightful owner of the disputed property in fee simple. Russo subsequently conducted his own survey in 1997. On May 28, 1997, a Justice of this Court denied Russo's request for a Preliminary Injunction to enjoin Green from physically removing or otherwise causing damage to the fence located on the property at issue in this dispute. On that same date, the Court likewise denied Green's Cross-Request for a Preliminary Injunction to enjoin Russo from erecting, maintaining or otherwise using any of Green's land and from further trespass on this land.
 The Adverse Possession
In Rhode Island, the law categorically prescribes what must occur before one is divested of legal title to real property as a consequence of another claiming that land through adverse possession. The adverse possession statute, G.L. 1956 §34-7-1, provides that one claiming title to land through adverse possession must have retained "uninterrupted, quiet, peaceful and actual seisin" of that land for the space of ten (10) years. Case law further requires that "a claimant's possession must `be actual, open, notorious, hostile, under claim or right, continuous, and exclusive'" Anthony v. Searle, 681 A.2d 892, 897 (R.I. 1996) (citing Locke v. O'Brien, 610 A.2d 552, 555 (R.I. 1992)) (quoting Sherman v. Goloskie, 95 R.I. 457, 465,188 A.2d 79, 83 (1963)). Finally, "[e]vidence of adverse possession must be proved by strict proof, that is, proof by clear and convincing evidence of each of the elements of adverse possession." Locke, 610 A.2d at 555.
In order to prove adverse possession by clear and convincing evidence, Russo must demonstrate that the erection of the electric fence, allegedly in 1983, manifested an actual, notorious, hostile, continuous, and exclusive claim to the woodland property behind his barn. See Id. Each case involving title by adverse possession must be determined through consideration of the individual facts and unique circumstances which surround it. See Dodge v. Lavin, 34 R.I. 514, 518-19,84 A. 857, 858 (1912).
Before this Court may address the elements required for an adverse possession claim, it must first be determined whether Russo has in fact laid claim to the subject property for the space often (10) years as required by G.L. 1956 § 34-7-1. The burden falls upon Russo to prove each element of adverse possession by strict proof. Samuel Nardone Co. v. Bianchi,524 A.2d 1114, 1117 (R.I. 1987). The evidence proffered by Russo includes pictures dated 1983, which depict his barn, horses, and a wooden fence. These pictures show Russo's own property, and not the disputed portion of land enclosed with an electric and an orange plastic, fence. Other evidence offered by Russo includes transfer papers for the horses purchased in 1983, as well as a receipt for fencing materials apparently used in the construction of the wooden, and not the electric fence. Although Russo has proved by clear and convincing evidence that a barn was erected in 1983, horses were acquired during 1983, and a wooden fence attached to the barn was installed, he has not proved by clear and convincing evidence that an electric fence has existed for the ten year statutorily required term on Green's property.
Further, the erection of an electric fence, by its very nature, is not for the purpose of setting a boundary line, but for the purpose of restraining livestock or horses. See Dodds v. Lagan,595 P.2d 452, 455 (Okl. App. 1979) (citing Drury v. Pekar,224 Or. 37, 355 P.2d 598 (1960)). Russo has repeatedly contended that he and several family members, "erected a wooden and electric fence on the property behind his house for the purpose of enclosing an area for [his daughter's] horses." (Defendant's Post-Trial Memorandum at 4). Although the Russos own approximately two acres of land on Brentwood Drive, they enclosed an area with the orange plastic fencing of approximately 3.91 acres behind their home to maintain their horses in a corral-type area rather than for the purpose of claiming property rights.
Other jurisdictions have determined that maintenance of a non-boundary fence and allowing livestock and animals to have access to undeveloped land, while evidence of possession, are not sufficient in themselves to establish adverse possession. Harris, 940 S.W.2d at 44 (citing Cunningham v. Hughes, 889 S.W.2d 864, 866-67 (Mo. App. 1994). Additionally, the significance of a fence in an adverse possession dispute rests upon the character of the land and what the fence communicates to others about possession of the disputed property. Nooteboom v. Bulson, 153 Or. App. 361,956 P.2d 1042 (1998). Assuming arguendo that Russo did install the electric fence during the requisite statutory term, this act and the evidence before the Court, did not show an intent to exercise dominion, control, or continuous use of the disputed property, but rather an intent to keep his horses contained. SeeDaneker v. Olenn, 705 A.2d 988, 989 (R.I. 1997).
In addition to the fact that Russo has failed to prove that the electric fence was in existence for the required ten years, he testified that the fence was sometimes marked with pieces of cloth since it was difficult to see. His daughter also testified that the electric fence was in fact, "not visible". Acts of possession and ownership which may support a finding of title by adverse possession in a densely populated and urban area may not also support such a finding where the property is sparsely populated farmland. Harris v. Lynch, 940 S.W.2d 42, 44 (Mo. App. 1997) (citing Teson v. Vasquez, 561 S.W.2d 119, 125-126 (Mo. App. 1977)). Provided that the Russos themselves have testified that this fence is not clearly visible and the subject property is located in deep woodland, it is indisputable that the "notorious" and "openness" elements necessary to prove adverse possession were sorely lacking. See Anthony v. Searle, 681 A.2d at 898.
Here the evidence does not show that Russo did any more than allow his horses to have access to the portion of Green's mostly wooded land. There was no evidence that defendant engaged in any other acts of possession such as clearing the disputed land, cultivating it, managing it for pasture, or building any other structures on it. See Anthony, 681 A.2d at 897. The evidence before the Court is insufficient to establish adverse possession and therefore, judgment quieting title must be and is awarded to the plaintiff. Defendant's claim of adverse possession of the disputed land in question is denied.
Counsel shall prepare an appropriate judgment for entry.
[1] The recorded plat lot is No. 14 and is listed on the Tax Assessor's Plat No. 8 as lot No. 187. That deed was recorded with the North Smithfield Land Records in Book 78 at page 887. The lot fronts 262 feet southerly on Brentwood Drive and 262 feet northerly, abutting Green's farm. The side lot lines are 167 feet.
[2] Although Russo admitted into evidence receipts, dated June 18, 1983, from North Smithfield Fence, they record only purchases of gates, posts, and railings and not of any electrical wiring or apparatus used for the electric fence. Additionally, the proffered evidence only shows the fencing on Russo's own property and not onto Green's land.
[3] Russo purchased this plat from Joseph R. Castanola et ux, which was recorded in Book 124, page 1191 of the North Smithfield Land Records. The recorded plat lot is No. 15 on the Tax Assessor's Plat No. 8 as lot No. 140.