271 A.2d 819.

EMERY E. LaFRENIERE *et ux. vs.* VERNON SPRAGUE *et ux.*

DECEMBER 22, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This civil action was brought to enjoin the defendants, hereinafter referred to as the Spragues, from trespassing upon land title to which is claimed by the plaintiffs, hereinafter referred to as the LaFrenieres. The LaFreniere lot extends eastward from Old Baptist Road in the town of North Kingstown to a depth of about 415 feet, and the area in dispute lies along the southerly boundary of this lot. The Spragues are the owners of a lot of land also extending easterly from Old Baptist Road for a distance of about 415 feet adjoining the LaFreniere lot on the south. The Spragues subsequently filed a cross complaint seeking to enjoin the LaFrenieres from trespassing upon the disputed area.

The case was tried in the Superior Court to a justice sitting without a jury. The court subsequently found that record title to the disputed area was in the Spragues and that the LaFrenieres had failed to establish acquiescence on the part of the Spragues in the location of the boundary line as claimed by the LaFrenieres. He found that they had failed also to establish that they had acquired title to the disputed area by adverse possession for a time in excess of the statutory period of ten years as provided in G. L. 1956, §34-7-1. From that decision the LaFrenieres have prosecuted an appeal to this court.

The matter at issue is the precise location of the line that constitutes the southern boundary of the LaFreniere lot and the northern boundary of the Sprague lot. This boundary extends easterly from Old Baptist Road, according to the deeds, for a distance of about 415 feet, more or less. The LaFrenieres contend that their deed, conveying to them a tract 100 feet wide and 415 feet in depth, includes the disputed area which appears to be about 10 feet in width extending easterly between the two properties from Old Baptist Road.

The record discloses that in November 1955 the LaFrenieres purchased their tract of land from Edwin W. Huling and Mary E. Huling, hereinafter referred to as the grantors. There is evidence in the record to the effect that Mr. Huling had first wanted to sell LaFreniere an 85-foot lot, but that LaFreniere insisted on having a 100-foot lot so that he could erect a ranch-type house and garage. In the deed conveying the property from the grantors to the LaFrenieres, the lot was described as follows:

"Commencing at a stone marker on the southwesterly corner of land now or formerly of Warren E. Williams and Bertha M. Williams, thence running easterly bounded northerly partly by said Williams land and partly by land now or formerly of Errol O. Noel and Avis E. Noel, a distance of four hundred fifteen (415)

feet, more or less, to a stone marker; thence turning and running southerly one hundred (100) feet; thence turning and running westerly a distance of four hundred fifteen (415) feet, more or less, to Old Baptist Road, the last-two mentioned courses bounding easterly and southerly on land of these grantors; thence turning and running northeasterly, bounding northwesterly on said Old Baptist Road, a distance of one hundred (100) feet, more or less, to the point and place of beginning."

It further appears that on December 5, 1955, the Spragues purchased their lot from the grantors. This was the portion of the tract lying immediately to the south of the lot conveyed by the grantors to the LaFrenieres, and the description contained in the deed is as follows:

"Commencing at a point in the northwesterly corner of the within-described premises, being the southwesterly corner of land now or formerly of Emery E. La-Freniere and Helen E. LaFreniere, thence running easterly, bounded northerly by said LaFreniere land, a distance of four hundred fifteen (415) feet, to a point; thence turning and running southerly a distance of one hundred (100) feet; thence turning and running westerly four hundred fifteen (415) feet, more or less, to Old Baptist Road, the last two-mentioned courses bounding easterly and southerly on land of these grantors; thence turning and running northeasterly, bounding northwesterly on said Old Baptist Road, a distance of one hundred (100) feet, more or less, to the point and place of beginning."

The LaFrenieres claim that the trial justice erred in finding that the record title to the disputed area was in the Spragues. As we understand the LaFrenieres, they base this claim on their contention that their deed was ambiguous and that the evidence established that there was an agreement between the parties at the time they purchased the land that the boundary line would be established along the southerly edge of the disputed area. It

has been held in this state that when the boundary line between adjacent lands is uncertain or disputed, the owners may establish a division line between them by express parol agreement and that if such an agreement is immediately executed and given effect by actual possession according to such line, the agreement is binding and conclusive and such division line shall not be disturbed, though it afterwards may be made to appear that it was not the true line according to the paper title. *O'Donnell* v. *Penney*, 17 R. I. 164, 20 A. 305; *Di Santo* v. *De Bellis*, 55 R. I. 433, 182 A. 488.

In attempting to support this contention, the LaFrenieres point to evidence as to their own conduct and the conduct of the Spragues during the period immediately following their purchases of their respective lots. Evidence introduced through the LaFrenieres was to the effect that the Spragues had observed LaFreniere measuring off the 100-foot width of his lot up to what would be the southerly line of the disputed area; that they had observed him clearing the area right up to that line; that they had known that he had planted trees and shrubs along the portion of that line nearest Old Baptist Road; that he had planted lawn in the disputed area inside of that line; that they had observed during the building of his home the location picked for a cesspool; and other evidence.

The Spragues, on the other hand, testified that they never agreed in any manner that the line lay where the LaFrenieres contend, but testified that in 1960 they had a survey of their lot made during the time they were building their home and that the survey disclosed that the line was 10 feet north of the row of bushes and trees and the location of the cesspool, and that they informed the LaFrenieres that their trees and shrubs, as well as their cesspool, were on Sprague land.

In our opinion, the trial justice simply rejected this evi-

dence as being without probative force on the question of whether there had been an express agreement relating to the location of the boundary line by the parties. However, the O'Donnell case makes it clear that such an agreement as to the location of the boundary line, to be binding and conclusive, must be evidenced by an express parol agreement. It is clear from the record here that there is no evidence of such an express agreement, and in the circumstances it is our opinion that O'Donnell, affecting as it does the title to real property, should be followed strictly and that the LaFrenieres' contention in this respect was properly rejected.

After a perusal of the decision of the trial justice, we are persuaded that he concluded that the LaFreniere deed was ambiguous in that, as he stated, it set out no angles at the turning points in the boundary. He, therefore, turned to a consideration of extrinsic evidence to determine what the true location of the boundary line was. This is perfectly proper, since it is well established that where a deed is on its face ambiguous, the location of the premises described therein may be established by resort to extrinsic evidence. Sherman v. Goloskie, 95 R. I. 457, 188 A.2d 79.

Among such extrinsic evidence was the Sprague deed, which in its metes and bounds description established the northerly line of the Sprague property with considerable clarity, and there is no dispute but that the northerly line coincides with the southerly line of the LaFreniere property. The trial justice apparently concluded that when these deeds were read together, the southeast corner of the LaFreniere lot and the northeast corner of the Sprague lot coincided at a point 415 feet from Old Baptist Road and that a line extending from Old Baptist Road 415 feet to this point would be the true boundary between the lots. The court, in clearing up the ambiguity, said "That

the boundary line between the two properties is as designated in the respective deeds from the Hulings to the LaFrenieres and the Spragues * * *." In so doing he obviously accepted the Sprague contention as to the location of the boundary line and held that record title was in the Spragues. We see no error in this conclusion.

The LaFrenieres argue also that if record title be in the Spragues, they acquired actual title by reason of their possession of the disputed area for a period in excess of the 10 years required by the statute. We have held repeatedly that possession, to constitute the required element of adverseness as contemplated by the statute, §34-7-1, must "* * * be actual, open, notorious, hostile, under claim of right, continuous and exclusive." *Chace v. Anarumo,* 104 R. I. 48, 51, 241 A.2d 628, 629. The trial justice, as we understand his decision, found that the LaFrenieres' possession of the disputed area was lacking in hostility and, therefore, did not satisfy the requirement of the statute that the possession be adverse. In his decision the trial justice expressly stated that LaFreniere, in measuring off his lot without professional assistance, had misinterpreted the description of the tract being conveyed to him by his deed.

There is an abundance of testimony adduced through the LaFrenieres, which is practically unchallenged, disclosing the nature and character of their actions in taking possession and occupying the disputed area. There is evidence that when he purchased the land in 1955 he measured it off and set the line at what would be the southerly boundary of the disputed area. There was further evidence that he cleared brush up to the line he had thus established and that shortly thereafter he planted some trees and bushes along what he assumed to be the true line for a distance extending about 150 feet east of Old Baptist Road. He further testified that he had planted and maintained a lawn

in the disputed area and had located and maintained a cesspool therein to be used in connection with his dwelling.

On the basis of this evidence the trial justice concluded that LaFreniere, in claiming the southerly line of the disputed area to be the true boundary line of his land, was intending to occupy what he believed was to the true line thereof and had no intention of claiming that land lying in the disputed area beyond the true boundary line of his lot. It was on the basis of this conclusion that the trial justice obviously held that LaFreniere's occupation was not hostile and that the possession was, therefore, not adverse within the contemplation of the statute.

It is true that in many jurisdictions the rule invoked by the trial justice is recognized and applied in cases where the evidence reveals that the possessor holds land beyond his true boundary but with the intention of claiming to the true boundary only. In such circumstances many courts have held that such a possession is not hostile and adverse possession cannot be established therefrom. *Warner* v. *Noble*, 286 Mich. 654, 282 N. W. 855; *Predham* v. *Holfester*, 32 N. J. Super. 419, 108 A.2d 458. However, in many jurisdictions if it is determined that the possession of the occupier is to a visible line in all events, regardless of the location of the true boundary line, his possession is hostile and adverse possession can be established therefrom. See Annot., 80 A.L.R.2d 1173 et seq.

It would appear that the latter rule is the one that has been accepted in Rhode Island. The precise issue has been presented to this court on only one occasion so far as we are able to determine. In *Dodge* v. *Lavin*, 34 R. I. 514, 518, 84 A. 857, 858, the court said that there is abundant authority that "* * * where a person through mistake as to the boundary line takes possession of land belonging to another, believing it to be his own, the holding is ad-

verse, and if continued for the requisite period, will give title by adverse possession." This view we believe to be the sound view and it has been followed for many years in numerous jurisdictions.

In *Ridgely* v. *Lewis,* 204 Md. 563, 567, 105 A.2d 212, 213, the court, in adopting a view similar to that stated in *Dodge* v. *Lavin, supra,* said: " 'The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial.' " Likewise in a recent Oregon decision the court sustained this as being the better rule of law. *Norgard* v. *Busher,* 220 Ore. 297, 349 P.2d 490, 80 A.L.R.2d 1161, sustains the view of this court in 1912. That court, conceding that its decisions on this issue were not quite harmonious and that the law should be clarified, held that "* * * possession under a mistaken belief of ownership satisfies the element of hostility or adverseness in the application of the doctrine of adverse possession."

We are persuaded that the cases to which we refer above are consistent with and sustain the soundness of the rule stated in *Dodge* v. *Lavin, supra.* We are likewise persuaded from an examination of the evidence that the LaFrenieres occupied up to the line that he had established when he measured the lot, this line being 10 feet southerly of the true line as defined in the deed from the Hulings to the LaFrenieres. The LaFreniere occupation of the land to the south of the true line rested on a misunderstanding as to where the true line was located. This we believe, however, is one of those rare situations in which the evidence is susceptible of but one reasonable inference.

That inference, in our opinion, is that the LaFrenieres intended to occupy and claim as their own all the land up to the southerly line of the disputed area and they did this because they were mistaken as to where the true line was located. This mistake, however, is without materiality in our opinion. We are of the opinion that the trial justice erred in inferring from this evidence that the occupation of the LaFrenieres was without the necessary element of adverseness.

We hold that the occupation by the LaFrenieres was adverse and satisfied the requirement of the statute for adverseness. The question, however, of whether the title passed by reason of adverse possession must rest upon whether the occupation of the LaFrenieres endured through the statutory period necessary to establish title by adverse possession.

The Spragues in 1960 caused a survey of their lot to be made and found therefrom that the true line was 10 feet north of the line laid out by LaFreniere as the southerly boundary of his lot. They notified the LaFrenieres that the trees, bushes and cesspool were on the Sprague land. This raises, in our opinion, a question of whether the continuity of the required statutory period necessary to acquire title by adverse possession was interrupted so as to toll the running of the statute in 1960. It is obvious that, had the statute been tolled at that time, even though an adverse possession began to run again thereafter, the required 10 years would not have run at the time this action was brought. However, after due consideration of the evidence and the law, it is our opinion that the survey and the notice did not constitute a sufficiently substantial interruption to halt the running of the statute against the Spragues.

It is true that the continuous and uninterrupted possession required to constitute adverse possession by the

statute does not require a constant use of the occupied area. It is necessary that it be continuous only in the sense that the claimant exercised a claim of right without interference at such times as it was reasonable to make a proper use of the land. *Lewes Trust Co.* v. *Grindle,* 53 Del. 396, 170 A.2d 280. In that case the Delaware court noted that temporary breaks in the use to which the occupier was putting the disputed area do not necessarily destroy the requisite continuity. It must be such as to actually interfere with and interrupt substantially the claimant's use of the land.

There is a well-settled view in this area of the law that the owner's use of land occupied by another under claim of right is presumed to constitute an exercise of the right of the owner to enjoy possession of such land. It has been held that such use of the land under dispute is an exercise of the right of ownership that would interrupt the continuity required by the statute. *Barrell* v. *Renehan,* 114 Vt. 23, 39 A.2d 330. It is to be noted here, however, that while they had the survey made and informed the La-Frenieres that they had planted on the Sprague land, the Spragues did nothing that interrupted the LaFreniere occupation. To the contrary, it appears that LaFreniere immediately removed the stakes placed by the surveyors and continued to maintain the lawn and to occupy the disputed area.

As we have noted, the particular act which caused us concern in this respect was to have a survey made and to give notice to the LaFrenieres of the results of the survey. There is a paucity of cases on the precise issue of whether a survey and notice to the occupier constitutes as a matter of law an interruption which would suffice to break the continuity sufficiently to toll the statute. We have found but one case bearing precisely on this issue. In *Alukonis* v. *Kashulines,* 97 N. H. 298, 86 A.2d 327, it

appears that a survey had been made and notice given. The court said at 300, 86 A.2d at 329, that the evidence as to the survey of the property "* * * was not sufficient to establish as a matter of law such an exercise of dominion over the strip by its record owner as to interrupt the continuity of the adverse possession of plaintiff and her predecessors in title."

It is our conclusion, then, that the LaFrenieres acquired title by adverse possession to that portion of the disputed area over which they exercised the necessary adverse use for the statutory period of 10 years. That area, in our opinion, begins at a point on the easterly line of Old Baptist Road at a granite bound set at the southwesterly corner of the LaFreniere land and extends in an easterly direction for a distance of 152.91 feet to a granite bound as indicated and delineated on a plan filed by the special masters appointed by the Superior Court to survey and lay out the boundary line between the two lots in accordance with the final decree of that court in *LaFreniere* v. *Sprague,* C. A. No. 67-143, thence turning and extending in a general southwesterly direction 10 feet to a point 152.91 feet easterly of Old Baptist Road, thence turning and running in a westerly direction for a distance of 152.91 feet to Old Baptist Road, thence turning and running in a general northeast direction a distance of 10 feet to the point of beginning.

The plaintiffs' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the Superior Court for the appointment of masters to survey the boundaries of the area hereinbefore described as having been acquired by the LaFrenieres by adverse possession for the necessary statutory period.

Motion to reargue denied.

*Edward M. Botelle, Z. Hershel Smith,* for plaintiffs.

*Paul P. Pederzani, Jr.,* for defendants.