367 A.2d 714.

PAUL A. RUSSO *et al. vs.* STEARNS FARMS REALTY, INC. *et al.*

JANUARY 7, 1977.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C. J. This is a civil action which seeks to quiet title to certain real property located in the town of Jamestown by virtue of the adverse possession by the plaintiffs and their predecessors in title for the statutory period in accordance with G. L. 1956 (1969 Reenactment) §34-7-1. Trial was held before a justice of the Superior Court sitting without a jury. The trial justice awarded title to the plaintiffs and the defendants initiated this appeal from that judgment. We affirm.

The plaintiffs and their predecessors in title were under the impression that they owned certain land contiguous to the south and west of the land to which they hold record title and upon which their house is located.[1] According to the recorded title, plaintiffs' southern boundary lies 3 inches from their house. The defendants hold record title to the disputed land both to the south and to the west.

---

[1]Since the plaintiff's possession commenced in 1967, and this suit was initiated in 1974, in order to prove that the disputed land was adversely possessed for the 10 years required by G. L. 1956 (1969 Reenactment) §34-7-1, it was necessary to tack the adverse possession of their predecessors in title, the Martins.

The plaintiffs and their predecessors in title used the land immediately to the south of the house as a driveway, regularly parking their vehicles in this area. The remainder of the southern portion of the disputed property is cleared land surrounded by woods. This area has been cleared and used for recreation by plaintiffs and their predecessors in title for more than 10 years. When the Martins, plaintiffs' immediate predecessors in title, lived in the house, this southern portion was used by them as a play area for their grandchildren. In the southeast corner of the cleared land, the Martins had a swing set and a brick barbecue. In addition, there was a sandbox and picnic table on this portion of the disputed land. There was testimony by Mrs. Martin that they used this property to the south of the house frequently for cookouts and family outings. They also performed general maintenance work, cutting grass, raking acorns, and cleaning up branches.

The plaintiffs, like the Martins, used this area for recreation. They replaced the swing set left by the Martins with their own which they placed in the southwest corner of the property. In this corner, they also had a dog house. They installed two horseshoe pits near the southern edge of the clearing; they repaired the brick barbecue and set up a new picnic table. In addition, plaintiffs put up a split rail fence along East Shore Road on the southeastern side of this portion of the disputed land. They improved the driveway, putting in gravel; they cut down a birch tree, and planted ten to twelve evergreen trees to the south of the driveway in the cleared area. In addition to improving the area, plaintiffs performed normal maintenance, cutting the grass, raking acorns and clearing the driveway.

On the western portion of the disputed land was a garage with an attached shed. These buildings were in existence at the time the Martins purchased their house. The Martins used the shed for storage of garden tools and children's

playthings. Behind these buildings and further to the west was an outhouse which was used by the occupants of the house from the late 1920's until sometime in 1963 or 1964 when the Martins installed indoor plumbing and tore the outhouse down. They filled in the remaining hole so that, according to testimony, their grandchildren could safely play in this area of the yard.

Soon after plaintiffs purchased the house, they tore down the garage, leaving the shed. The plaintiffs remodeled the shed and used it as a stall for their children's pony. The plaintiffs cleared some of the brush and built a corral fence around this portion of land to the west of the house. In addition, they planted grass to the west of the driveway.

The defendants contend that the trial justice erred in finding that plaintiffs had acquired title to the land by adverse possession thereof for several reasons: first, that plaintiffs failed to sustain the burden of establishing such adverse possession by strict proof; second, that plaintiffs failed to establish that the use of the western portion was continuous; third, that plaintiffs failed to establish that their use of the southern portion was exclusive and uninterrupted; and forth, that there was insufficient evidence to support the finding that plaintiffs' adverse possession extended 70 feet south from their house. In addition, defendants argue that the trial justice assumed facts not in evidence in evaluating the testimony of Terrance F. McGaughan, one of the defendants, and that he improperly used the view he took of the property as evidence. We find none of these arguments sufficient to mandate reversal of the trial court decision.

I

To acquire title to land by adverse possession, a claimant must prove actual possession of the property claimed and acts of dominion over that property as required by law. *Dodge* v. *Lavin*, 34 R.I. 514, 84 A. 857 (1912). The

generally accepted rule is that the possession required to acquire title pursuant to this statute must be actual, open, notorious, hostile, under claim of right, continuous and exclusive. *Sherman* v. *Goloskie,* 95 R.I. 457, 188 A.2d 79 (1963). As this court has frequently stated, claimants must establish each of these elements of possession by strict proof; that is, proof by a preponderance of the clear and positive evidence. *Finocchiaro* v. *Francescone,* 97 R.I. 371, 198 A.2d 37 (1964); *Sherman* v. *Goloskie, supra; Day* v. *Proprietors of Swan Point Cemetery,* 51 R.I. 213, 153 A. 312 (1931). The determination of whether claimants sustained their burden of proof involves an exercise by the trial justice of his factfinding power. It is well-settled that the trial justice's findings of fact will be upheld unless they are clearly wrong or unless he has misconceived or overlooked material evidence. I Kent, *R. I. Civ. Prac.* §52.5 at 384 (1969). Here the trial justice found that the acts of dominion upon which plaintiffs relied to establish adverse possession were sufficient to manifest an intent to oust the true owner thereof and to put the true owner on notice of the claim of ownership. From a close examination of the record, we are unable to perceive that the trial justice either overlooked or misconceived any material evidence bearing on the issues or that the evidence adduced to support the claim of adverse possession is not clear and positive.

The defendants argue that because there was a gap in the use of the western portion of the disputed land, plaintiffs failed to establish the requisite continuity of possession. They claim that the use of the area ceased in 1963 or 1964 when the outhouse was removed, and did not resume until 1967 when plaintiffs built a corral. However, evidence was adduced at trial that the Martins and their predecessors used the outhouse for more than 10 years prior to its removal. This continuous use for the statutory

period was sufficient to establish adverse possession to this portion of land. In addition, the apparent gap in use did not break the continuity of possession. Since the land in dispute was relatively unimproved rural land, continual use was not necessary. As we stated in *LaFreniere* v. *Sprague,* 108 R.I. 43, 52-53, 271 A.2d 819, 824 (1970):

> "It is true that the continuous and uninterrupted possession required to constitute adverse possession by the statute does not require a constant use of the occupied area. It is necessary that it be continuous only in the sense that the claimant exercised a claim of right without interference at such times as it was reasonable to make a proper use of the land. [citation omitted]. * * * [T]emporary breaks in the use to which the occupier was putting the disputed area do not necessarily destroy the requisite continuity."

Essentially, the test is whether the use to which the land has been put is similar to that which would ordinarily be made of like land by the owners thereof. *Sherman* v. *Goloskie, supra* at 466, 188 A.2d at 84. An examination of the record reveals acts of possession that took place during this period of time. The Martins removed the outhouse; they filled in the hole that remained so that their grandchildren could safely play in this area. Furthermore, the shed which stood on this land was used by the Martins throughout this period of time. These acts of dominion were sufficient to provide notice to the world that the Martins claimed title to this land. Therefore, we conclude that the trial justice did not err in finding that plaintiffs acquired title to the western portion of land by adverse possession.

With regard to the southern portion of the disputed land, defendants argue: (1) that there was insufficient evidence to justify the trial justice's finding that plaintiffs' possession extended 70 feet south from their house, and (2) that defendants' posting of "No Hunting" signs on this

property established that plaintiffs' possession was not exclusive and uninterrupted.

The defendants' first argument is based on the fact that the largest estimate of the size of the grassy area was 40-50 feet. The defendants thus argue that there is no evidence to support the trial justice's award of an area 70 feet south of the house. The defendants' argument, however, overlooks other testimony. While the estimates of the extent of the grassy area given by the witnesses varied from 20-30 feet to 40-50 feet, most of the witnesses agreed that the present extent of this cleared area was the same as it had been throughout the statutory period. Thus, the trial justice could properly have decided to disregard the witnesses' estimates as unreliable; there was sufficient evidence that the present extent of the clearing was the area actually possessed by plaintiffs and their predecessors.

The defendants' posting of "No Hunting" signs did not establish as a matter of law that plaintiffs' possession was nonexclusive or interrupted. Mrs. McGaughan, one of the defendants, testified that she posted "No Hunting" signs within 40 to 50 feet of the house. John J. Martin, plaintiffs' predecessor in title, corroborated her testimony; however, he also testified that he saw her posting signs on the border of his property which he believed to be where the clearing met the wooded area. As a result, the trial justice could have concluded that Mrs. McGaughan was not posting signs in the cleared area claimed by plaintiffs, but rather in the wooded area to the south. Her testimony during cross-examination further supports this conclusion. She testified that she did not notice any of the easily identifiable features of the yard, i.e., the fireplace, shed, picnic table, or swing set. Based on this testimony, the trial justice could reasonably have concluded she was not posting signs within the cleared area claimed by plaintiffs.

## II

The defendants contend that the trial justice used as evidence his view of the property. The taking of a view is not per se error, but a view is not evidence; it is intended as a device to enable the judge or jury to better comprehend and apply the evidence adduced at trial. *Corrado* v. *Providence Redevelopment Agency*, 110 R.I. 549, 294 A.2d 387 (1972). The trial justice was aware that the view was not evidence and so stated in deciding to take the view. The defendants argue that the trial justice's mention of the view in his decision establishes that he used it as evidence. They further argue that his alteration of the surveyor's boundaries in the final decision was based only on his view of the property. After a careful examination of the record, we conclude that there was sufficient evidence apart from the view to support the lower court's modification of the survey. As discussed above, there was ample testimony that the extent of the clearing remained unaltered throughout the period of adverse possession. The view could properly be used to interpret and understand the testimony relating to the extent of possession. The trial court's statement, "[t]he photographs in evidence and the view I took of the premises in conjunction with the testimony in this case, leads me to believe that Mr. O'Loughlin missed, in a few instances, the actual lines of occupation which I presume he was trying to reflect," does not establish that he used the view as evidence.

We have examined the defendants' other contentions and find them to be without merit.

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

Mr. Justice Paolino did not participate.

*Corcoran, Peckham & Hayes, Kathleen Managhan, Joseph T. Houlihan,* for plaintiffs.

*Swan, Keeney, Jenckes & Asquith, Conrad M. Cutcliffe,* for defendants.