DECISION
In this Declaratory Judgment action, the parties dispute the ownership and use rights to a driveway located in Little Compton, Rhode Island. Allen J. Drescher, Trustee of Little Compton Realty Trust ("Plaintiff"), seeks a judgment declaring his right to an easement on a portion of the driveway that runs through the Sigurd W. Johannessen's property ("Defendant"). Jurisdiction is pursuant to Rhode Island General Laws 1956 § 34-14-1 and § 9-30-1.
 I Facts Travel
Plaintiff is the owner of property located at 241 West Main Road, Little Compton, Rhode Island, Lot 6 ("Lot 6"). Lot 6, which Plaintiff calls "Summer Farm," comprises approximately 50 acres with approximately 523 feet of frontage on West Main Road. Plaintiff came into possession of Lot 6 in 1984. Lot 6 originally contained structures that were either fire damaged or had fallen into disrepair; as such, the property was uninhabited when Plaintiff came into possession. The buildings on Lot 6 are concentrated between 600 and 900 feet from West Main Road. Plaintiff does not dispute that Lot 6 has its own entryway, which existed when Plaintiff came into possession. Plaintiff's entryway was gated; Plaintiff or his former business partner would ordinarily lock and unlock the gate upon entering and exiting Lot 6. *Page 2 
Defendant is the owner of property located at 247A West Main Road, Little Compton, Rhode Island, Lot 7 ("Lot 7"), which is adjacent to Lot 6. Defendant's property comprises approximately 5.85 acres; it is unimproved and uninhabited. The disputed driveway ("the driveway"), which is 40 feet wide, runs from West Main Road along the borders of Lot 6 and Lots 8 and 9 for 765 feet before it reaches Lot 7. Once the driveway reaches Defendant's property, the driveway continues to run along the southern border of Defendant's property for approximately 1170 feet. It is undisputed that Defendant is the record owner of the driveway.
Defendant's predecessors-in-title, Elizabeth and Ward W. S. Hough ("the Houghs"), came into possession of Lot 7 in 1966. The Houghs subdivided Lot 7 in 1986 and 2004. With each subdivision, the Houghs sought Town approval, filed subdivision plats with the Town, and recorded the plats in the Town's land evidence records. Each filing showed the driveway, designated as a private right-of-way, as the only way of ingress and egress for the lots subdivided within Lot 7: Lots 7-2, 7-3, and 7-4. The driveway tracks the eastern border of Lot 7-4, and continues west along the southern borders of both Lots 7-4 and 7-3, and reaches its end at the eastern border of Lot 7-2. After the first subdivision, the Houghs sold Lot 7-2 to Thomas Petit. As the driveway was the only way of ingress and egress, the transfer of Lot 7-2 included an express easement to use the driveway. The driveway, thus, remained ungated for the benefit of the landlocked lots. In 2005, the Houghs again subdivided what remained of Lot 7. The driveway was again noted as the private right-of-way that afforded access to all the Lot 7 parcels.
Both Plaintiff and the Houghs gave neighbor Coll Walker express permission to farm their lots. Walker was permitted to use the driveway to provide for easier access to the adjacent lots instead of returning from Lot 7 to West Main Road to enter Lot 6 through its gated entry.
Plaintiff used the driveway to access his property, Lot 6, numerous times since *Page 3 
purchasing the property in 1984. Plaintiff did not, however, use the driveway as his exclusive access point. During periods of activity on Lot 6 — wherein Plaintiff or employees of Plaintiff's business entity Hyde Properties visited the property to clear brush and repair structures — Plaintiff accessed Lot 6 through both the driveway and Lot 6's own gated entryway.
In 1987 a hurricane swept through the area. Jack Gaspar, superintendent of Hyde Properties, visited Lot 6 approximately 3-4 times per week to clean up. Vandalism occurred at Lot 6 in 1997. Thereafter, Plaintiff was more careful to lock the gate to the Lot 6 road. Plaintiff began to use the ungated driveway frequently out of the convenience of avoiding unlocking and relocking the gate to Lot 6.
In August of 2006, Defendant contracted to purchase parcels 7-3 and 7-4, including the driveway, which runs along the parcels' southern borders. Shortly thereafter, Defendant received a letter from Plaintiff's attorney asserting that Plaintiff possessed a prescriptive easement over the driveway. Plaintiff filed a Notice of Lis Pendens on parcels 7-3 and 7-4. Defendant nonetheless purchased 7-3 and 7-4. Litigation ensued. On February 16, 2009, the matter was tried to the Court without a jury.
 II Standard of Review
The Court decides non-jury trials pursuant to its power under Rule 52, which provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." Super. R. Civ. P. 52(a). Under Rule 52, "the trial justice sits as a trier of fact as well as law." Parella v. Montalbano,899 A.2d 1226, 1239 (R.I. 2006) (quoting Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984)). Thus, the trial justice "weighs and considers the evidence, passes upon credibility of the witnesses, and draws *Page 4 
proper inferences." Id. Our Supreme Court does not require an extensive analysis and discussion of the evidence and testimony for compliance with the mandates of Rule 52. "Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case."Hilley v. Lawrence, 972 A.2d 643, 651 (R.I. 2009) (quotingDonnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998) (citation omitted)).
 III Analysis A Judicial Estoppel
Defendant informs the Court that in 1989, Plaintiff offered Lot 6 for sale but did not reference any driveway rights connected with the sale. When the sale fell through, prospective buyer Richard Morash brought suit against Plaintiff and his former business partner Arthur Murphy for specific performance of the purchase and sales agreement. Defendant notes that throughout the litigation, the driveway was never associated with Lot 6. Further, Defendant informs the Court that in 1997, Plaintiff and Murphy engaged in litigation over Lot 6, resulting in Plaintiff's acquisition of Murphy's interest in 2001, again without reference to the driveway. Without explicitly arguing so, Defendant raises a question of judicial estoppel.
The Rhode Island Supreme Court mirrors the jurisprudence of the United States Supreme Court on the topic of judicial estoppel.Gaumond v. Trinity Repertory Co.,909 A.2d 512, 519 n. 8 (R.I. 2006) (referring the reader toNew Hampshire v. Maine, 532 U.S. 742, 749-56 (2001) for "an extensive discussion of the doctrine"). The Court may invoke the doctrine of judicial estoppel at its discretion. Gaumond,909 A.2d at 519 (quoting New Hampshire, 532 U.S. at 750). Judicial estoppel "is an extraordinary form of relief, that `will not be applied unless the *Page 5 
equities clearly [are] balanced in favor of the part[y] seeking relief.'" Gaumond, 909 A.2d at 519 (quoting SouthexExhibitions, Inc. v. Rhode Island Builders Assoc.,279 F.3d 94, 104 (1st Cir. 2002) (applying Rhode Island law) (internal quotation omitted)).
"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." New Hampshire, 532 U.S. at 750. Courts evaluate the circumstances to determine "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." Id. (citation omitted). "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations . . . and thus poses little threat to judicial integrity."Id. (citation omitted).
Here, it appears that Plaintiff settled with his opponents in both the 1989 purchase-and-sale litigation with Morash and the 1997 business dispute with Murphy. Defendant does not inform the Court of any judicial findings that were based upon representations made by Plaintiff regarding the features appurtenant to Lot 6. This Court, therefore, will not find that Plaintiff "succeeded in persuading a court" to accept that the driveway was associated with Lot 6. Plaintiff's claim of an interest in the driveway may proceed.
 B Easement By Prescription
"`In Rhode Island, [o]ne who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years.'"Nardone v. Ritacco, 936 A.2d 200, 205 (R.I. 2007) (quotingStone v. Green Hill Civic Assoc.,786 A.2d 387, 389 (R.I. 2001) (quotations omitted)). *Page 6 
"[I]t is incumbent upon the party claiming an easement over the land of another to present clear and convincing evidence of the claim." Hilley, 972 A.2d at 650 (easement by implication) (citing Ondis v. City of Woonsocket,934 A.2d 799, 803 (R.I. 2007) (easements by substitution and necessity); Berberian v. Dowd,104 R.I. 585, 589-90, 247 A.2d 508, 511 (1968) (express easement)). Evaluation of the claimant's case "`involves an exercise of the fact-finding power.' . . . Indeed, `factual determinations are generally necessary to determine whether claimants have established the elements of a prescriptive easement'" Nardone,936 A.2d at 905 (quoting Stone, 786 A.2d at 389-91).
A claim of easement by prescription follows the same analytical framework as a claim of adverse possession, except for the adverse possession element of "exclusivity." Compare Corrigan v.Nanian, 950 A.2d 1179 (R.I. 2008) (quoting Acampora v.Pearson, 899 A.2d 459, 466 (R.I. 2006) (listing elements of adverse possession as "`actual, open, notorious, hostile, under claim of right, continuous, and exclusive for at least ten years'") (emphasis added)); with Nardone,936 A.2d at 205 (quoting Stone,786 A.2d at 389 (quotation omitted) (listing elements of easement by prescription as "`actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years'")). Hereinafter, this Court will apply the reasoning employed from both adverse possession and easement by prescription jurisprudence.
1. Actual
"Actual possession has been defined as use and occupation of the property, or as possession in fact, effected by actual entry on, and actual occupancy of, the premises." 3 Am. Jur. 2d AdversePossession § 18 (2009). Here, Plaintiff did enter and occupy the driveway consistent with the manner in which one would ordinarily enter and occupy a driveway. *Page 7 
2. Open Notorious
Plaintiff "must show that his use of the land was sufficiently open and notorious to put a reasonable property owner on notice of [his] hostile claim." Tavares, 814 A.2d at 352 (citingAnthony v. Searle, 681 A.2d 892, 897-98 (R.I. 1996)). "The proper inquiry [is] whether the party claiming ownership by adverse possession used the property in a manner consistent with how owners of similar property would use such land and whether these uses were inclined to attract attention sufficient to place the world on constructive notice." Carnevale v. Dupee,853 A.2d 1197, 1201 (R.I. 2004) (citing Tavares, 814 A.2d at 354). Open and notorious use, however, does not necessarily mean ostentatious use. The record owner is "still chargeable with knowing whatever was done openly on the land he owns — whether or not it could be observed from the road or from the boundary of the property." Id.
Here, Plaintiff claims that the Houghs were aware of Plaintiff's and Plaintiff's predecessors-in-title's use of the driveway to access Plaintiff's property. Plaintiff testified, however, that he never spoke with the Houghs about the driveway specifically, but did meet Mrs. Hough at some point. Plaintiff testified that although he used the driveway, he never ran into the owners of the Lot 7 parcels. This is not surprising given the fact that the Lot 7 parcels were unimproved. The fact that Plaintiff's use was mostly unobserved, however, does not necessarily prevent a finding that Plaintiff's use was open and notorious.
The testimony of numerous other witnesses weighs against a finding of open and notorious use. Attorney Stetson Eddy represented the Houghs in their efforts to subdivide Lot 7. Although Eddy testified that no one was excluded from the driveway, Eddy also testified that from 1989-2003, he never saw anyone using the driveway on his twice-daily drives past the property. Wayne Montgomery, a neighbor living approximately half a mile from Lot 6 and who *Page 8 
farmed on Lots 1-1 and 1-2, testified that he was able to observe activities on Defendant's property from both his home and work locations, and was familiar with the disputed driveway. Montgomery testified that he has traveled past the properties approximately four (4) times per day for the past twenty (20) years. Montgomery testified that he observed Walker farming the properties and knew Walker had permission to do so. Montgomery also testified that it was only within the last five (5) to six (6) years that he began to notice activity in the Lot 6 area.
Walker, the neighboring farmer who was permitted to use the driveway to farm Lots 6 and 7, also testified. Walker stated that he never spoke to Plaintiff about the driveway because Walker had no true interest in the driveway: Walker believed Mrs. Hough owned the driveway, and that in later years the owners of Lot 7-2 owned at least a part of the driveway. Walker testified that around fifteen years previously, he began to see Plaintiff's "sporadic" presence at Lot 6, but never observed anyone regularly at that property. It was not until a mere three years before Plaintiff brought this claim, in 2003, that Walker started to see "a lot of activity" on Lot 6, for example, brush clearing, building restoration, and field clearing. The Court finds these witness's accounts of infrequent use credible. Plaintiff has not established, by clear and convincing evidence, that his use of the driveway was open and notorious.
3. Hostile
In determining hostility the "pertinent inquiry centers on the claimants' objective manifestations of adverse use rather than on the claimants' knowledge that they lacked colorable legal title."Tavares, 814 A.2d at 351. To establish a hostile use, the easement user must "establish a use `inconsistent with the right of the owner, without permission asked or given, . . . such as would entitle the owner to a cause of action against the intruder [for trespass].'" Id. (citing 16 Powell on RealProperty, § 91.05[1] at 91-23 (2000) (brackets inTavares)). Our *Page 9 
Supreme Court has held that "parties seeking to establish an easement by prescription must show some affirmative act that puts the property owner on notice that their occupancy was hostile to the owner and that they were claiming the property as their own."Stone, 786 A.2d at 390 (citing Altieri v. Dolan,423 A.2d 482, 484 (R.I. 1980)).
When permission is granted for a particular use, later use of the same kind cannot ripen into a prescriptive easement.Hilley,972 A.2d at 652 (citing Stone, 786 A.2d at 390). A permissive use may become hostile only when "the permission has been withdrawn * * * or [when] events have occurred indicating that the original permission no longer obtained." Id.
Here, weighing strongly against a finding of hostility is the testimony of Jack Gaspar, an employee of Plaintiff's business entity. Gaspar testified that between 1993 and 1999, he visited the property 3-4 times per week and on weekends to clear brush. During these visits, Gaspar occasionally encountered Thomas Petit, the owner of Lot 7-2, while using the driveway. Gaspar observed the owners of Lot 7-2 using the driveway because Lot 7-2 was landlocked.
Noticing Gaspar's truck, bobcat, and small crew of laborers, the owner of Lot 7-2 asked Gaspar to fill in some potholes in the driveway. Gaspar testified that he performed occasional maintenance tasks on the driveway throughout 1994-1999 as "a common courtesy" to Petit. Gaspar testified that Petit gave him permission to use the driveway. Moreover, Gaspar's work on the driveway suggests payment to Petit for the privilege of using the driveway.
Plaintiff argues that Walker's use of the driveway weighs in favor of a finding that Plaintiff's use was hostile. The evidence, however, demonstrates that both Plaintiff and Defendant's predecessor-in-interest gave Walker express, but informal, permission to use the driveway to travel between Lots 6 and 7. Walker took tractors and trucks on the driveway to access both Lots 6 and 7. Gaspar testified that he worked with Walker planting squash and *Page 10 
removing boulders, and that he and Walker always used the driveway when they worked together. Plaintiff and his employee Gaspar used the driveway in a manner similar to Walker's known permissive use.
This evidence demonstrates that Plaintiff was not "claiming the property as [his] own," but rather, Plaintiff was merely availing himself of a perceived invitation to occasionally traverse the driveway. Stone,786 A.2d at 390 (citing Altieri, 423 A.2d at 484.) Moreover, Gaspar testified that Walker's equipment was larger than Plaintiff's, which weighs against a finding that Plaintiff exceeded the scope of this permission to ripen his permissive use into hostile use. Plaintiff also admits that he knows the owners of Lot 7-2 have a "deeded easement" to use the driveway. Plaintiff's activities evince use of the driveway consistent with the known permitted use of neighbors. Plaintiff has not established, by clear and convincing evidence, that his use of the driveway was hostile.
4. Claim of Right
"[A] claim of right may be proven through evidence of open, visible acts or declarations, accompanied by use of the property in an objectively observable manner that is inconsistent with the rights of the record owner." Tavares, 814 A.2d at 351. "In essence, . . . a claim of right is the same as [] hostility, in that both terms simply indicate that the claimant is holding the property with an intent that is adverse to the interests of the true owner." Id. (citingPowell, § 91.05 at 91-28, 91-29.) Our Supreme Court has stated that no particular act is required to show an intention to claim ownership. Stone, 786 A.2d at 391 (citing Greenwood v.Rahill, 122 R.I. 759, 763, 412 A.2d 228, 230 (1980)). "It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land." Id. *Page 11 
Here, the fact that Plaintiff's use of the driveway was consistent with the known permissive use of others indicates that Plaintiff's use did not occur under a claim of right. Further, Plaintiff testified that his presence on the driveway — during his "sporadic" visits — was "fleeting." Such fleeting use, combined with the fact that Plaintiff never physically altered the driveway despite evidence of brush overgrowth in the area, does not satisfy our Supreme Court's requirement of "open, visible acts or declarations" of ownership. Tavares, 814 A.2d at 351.
Evidence relating to Plaintiff's use of his own property also weighs against a finding that Plaintiff used the driveway under a claim of right. In addition to using the Lot 7 driveway when he was not inclined to unlock the gate to his own driveway, Plaintiff testified that he also used the Lot 7 driveway when he believed the vegetation on Lot 6 had grown to obstruct access to the rear of Lot 6. To remedy his access problem, Plaintiff applied for and received preliminary approval from the Town Council to build a new road on Lot 6. The new road, called "Summer Farm Lane," would run parallel to the subject driveway to afford Plaintiff access to all of Lot 6 to facilitate development for future subdivision. Summer Farm Lane would afford the buyers of internal parcels access to West Main Road. None of the materials associated with Plaintiff's road construction or subdivision plans show access to any portion of Lot 6 through the subject driveway.
Although Plaintiff later abandoned this course of action, this evidence nonetheless demonstrates that Plaintiff did not intend to claim the driveway as his own. This evidence, rather, shows "open, visible acts or declarations" that Plaintiff planned to use the driveway temporarily, not permanently. Tavares, 814 A.2d at 351. Plaintiff has not established, by clear and convincing evidence, that his use of the driveway occurred under a claim of right. *Page 12 
5. Continuous Possession for Ten Years
 [T]he continuous and uninterrupted possession required to constitute [easement by prescription] does not require a constant use of the occupied area. It is necessary that it be continuous only in the sense that the claimant exercised a claim of right without interference at such times as it was reasonable to make a proper use of the land. Russo v. Stearns Farms Realty, Inc., 117 R.I. 387, 392, 367 A.2d 714, 717 (1977) (quoting LaFreniere v. Sprague, 108 R.I. 43, 52-53, 271 A.2d 819, 824 (1970)).
Plaintiff testified that he used the Lot 7 driveway "at times" because the gate to the entryway to his own property, Lot 6, was locked. Plaintiff testified to "sporadic," "intermittent," and "random" use of the driveway. Plaintiff further testified that weeks would go by without a visit to Lot 6 via either the driveway or Lot 6's own gated entrance.
Gaspar, employee of Plaintiff's business entity, testified that he visited the property weekly in 1987, and multiple days per week, including weekends, from 1993-1999. Gaspar's behavior, in particular from 1994-1999, demonstrates permissive — not prescriptive — use. Even assuming for the purposes of argument, however, that the longest period of Gaspar's visits — from 1993-1999 — satisfied the previous elements of easement by prescription, that six (6) year period is insufficient.
Ward Hough, son of the Houghs, testified that a lot of clearing began to take place at Lot 6 in 2003. Ward[1], who was given parcels 7-3 and 7-4 in stages between 1999 and 2002, further stated that it was not until 2003 that he saw anyone clearing the land or repairing the structures on Lot 6. As discussed, the evidence does not clearly and convincingly establish either hostile use or use under a claim of right. This Court will assume for the purposes of argument, however, that Plaintiff used the driveway continuously beginning in 2003. Plaintiff asserted the prescriptive right in 2006. Because Plaintiff's claim was filed a mere three (3) years after *Page 13 
continuous use began, the Court declines to make a finding on whether Plaintiff's use from 2003-2006 is the kind that would be continuous and uninterrupted. Therefore, Plaintiff has not demonstrated "continuous and uninterrupted possession" of the driveway for the requisite ten (10) year period. Russo,117 R.I. at 392, 367 A.2d at 717.
Plaintiff has not satisfied his burden of proving, by clear and convincing evidence, the elements of an easement by prescription.
 C Public Dedication
Plaintiff argues that if he does not have a prescriptive easement to use Defendant's driveway, Plaintiff may nonetheless use the driveway because it is a public way. "`[T]o create a public way by use the proof must show that the use has been general, uninterrupted, continuous[,] and adverse so as to warrant the inference that it had been laid out, appropriated, or dedicated by the proprietors of the adjoining land to the public.'" Town ofBarrington v. Williams, 972 A.2d 603, 612 (R.I. 2009) (quotingEddy v. Clarke,38 R.I. 371, 379, 95 A. 851, 854 (1915) (brackets inWilliams)). "`An occasional use by a few persons living in the neighborhood without any assertion of public right is not sufficient.'" Eddy, 38 R.I. at 379, 95 A. at 854 (quoting 22 Am. Eng. Ency. L. 1221).
"When a property owner subdivides land and `sells lots with reference to a plat, he [or she] grants easements to the purchasers in the roadways shown on the plat, with or without later dedication of the roadways to the public.'" Bitting v. Gray,897 A.2d 25, 32 (R.I. 2006) (quoting Newport Realty,Inc. v. Lynch,878 A.2d 1021, 1032 (R.I. 2005)) (quotations omitted). In the absence of dedication to the public, the easement depicted on the plat "is appurtenant to the property and passes with the conveyance of the property, unless specifically excluded, even *Page 14 
though not mentioned in the deed." Newport Realty,878 A.2d at 1033 (quotations omitted).
The evidence adduced here overwhelmingly shows that the owners of Lot 7, the Houghs, subdivided Lot 7 into smaller parcels, each benefited by an appurtenant easement, a "Private R.O.W.", not a public way. Moreover, the evidence fails to show "general, uninterrupted, continuous[,] and adverse" use of the driveway sufficient for a finding of public dedication. Williams,972 A.2d at 612 (quoting Eddy, 38 R.I. at 379, 95 A. at 854). Plaintiff correctly asserts that numerous people used the driveway over the years. Each person's use, however, was permissive, not adverse, and is therefore not evidence of public dedication.Williams, 972 A.2d at 612.
It is undisputed that Walker's use of the driveway was permissive. Gaspar's use was sporadic, and not infrequently occurred under the express permission of either Walker or Petit. Plaintiff's use, also, was frequently consistent with Walker's permissive use. Neither Walker, Gaspar, or Plaintiff thus used the driveway continuously in an adverse manner.
According to Walker, another neighbor, Mr. Tripp, used the driveway to visit Walker and to buy vegetables from him. Plaintiff argues that this evidence demonstrates public dedication of the driveway because members of the general public used the driveway. The Court interprets this evidence differently: Walker's permission to farm the lots, and to use the driveway to do so, likely encompassed permission to invite occasional produce buyers to the area. Thus, Tripp's use of the driveway was not adverse.
Wayne Montgomery, another neighbor, testified that he never saw anyone using the driveway, but that he himself had used it on occasion. Montgomery, like Walker, farmed in the area accessible only by the driveway. Montgomery testified that he farmed parcels 7-3 and 7-4, and used the driveway to access them, because "that's just how to get to 7-3 and 7-4." *Page 15 
Montgomery did not testify to the time period in which he farmed parcels 7-3 and 7-4, but it is evident that he had permission from the owners of those parcels to do so, and thus Montgomery's occasional use of the driveway is not adverse for public dedication purposes.
The Houghs' Attorney, Stetson Eddy, testified that he never knew anyone to be excluded from the driveway. Eddy's testimony does not, however, support a finding that the driveway was transformed into a public way. Eddy testified that he used the driveway as a young man to explore the area, but that he had the Houghs' permission to do so. Eddy further testified that when representing the Houghs through both of their subdivision proceedings with the local Planning Board, Eddy never mentioned the possibility of designating the driveway as a public way. All of the subdivision maps label the driveway "Private R.O.W."
Eddy's testimony did not merely concern his own dealings regarding the driveway. Richard Humphrey and his wife owned Lot 8, a small lot located at West Main Road, which bordered the driveway on its south side for approximately 250 feet. Eddy testified that he knew Humphrey had punched a hole in the wall edging the driveway in order to allow construction equipment to turn off the driveway into Lot 8, but Eddy also testified that he never saw Humphrey use the hole. Moreover, Eddy testified that he told Humphrey that Humphrey could not use the hole in the wall, and that thereafter, Humphrey repaired the hole in 1997 and 1998. Plaintiff does not dispute that Humphrey abandoned any access by way of the driveway. Thus, any use by Humphrey was "`[a]n occasional use by a []person[] living in the neighborhood without any assertion of public right, [which] is not sufficient.'" Eddy,38 R.I. at 379, 95 A. at 854 (quoting 22 Am. Eng. Ency. L. 1221).
The testimony of one witness both negates and supports the conclusion that the Lot 7 driveway is a public way. In accord with the other witnesses' testimony of occasional, not *Page 16 
adverse use, Jane Cabot testified that the Cavanaughs, Plaintiff's predecessors-in-title, invited her to visit them at Lot 6, and that Cabot occasionally used the driveway to do so. Cabot testified that she also used a pathway from her own property, Lot 4, which is adjacent to Lot 6, to reach Lot 6. Such "`occasional use by a few persons living in the neighborhood without any assertion of public right is not sufficient'" for a finding of public dedication.Eddy,38 R.I. at 379, 95 A. at 854 (quoting 22 Am. Eng. Ency. L. 1221).
In contrast, Cabot testified in support of Plaintiff's claim that the Lot 7 driveway was dedicated for public use. Cabot testified that she sat on the Little Compton Town Council in 1986 and presided over the Houghs' first subdivision petition. Cabot testified that throughout that process, she considered the driveway a "dedicated legal road."
The Court does not question Cabot's credibility or the accuracy of her memory. The Court is not convinced, however, that Cabot's belief that the driveway was a public road is sufficient to sustain a finding of public dedication. Cabot's belief that the driveway was a public road was based upon a map presented to the Town Council during the subdivision process labeling the driveway an "area of proposed road." (Pl.'s Ex. 6.) Although the original proposal is unclear on the intended status of the driveway, the evidence strongly supports this Court's conclusion that no public dedication occurred. The evidence demonstrates that the use of the driveway by others was not use by the general public — it was use by neighbors. Further, the use by others was not adverse — it was overwhelmingly use by those with permission. Lastly, the use by others was not continuous — it was occasional. *Page 17 
 Conclusion
This Court declares that Plaintiff has no prescriptive rights in the driveway. This Court declares that the driveway is not a public road.
Counsel shall agree upon an appropriate form of judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] The Court identifies Ward Hough by first name for the purposes of clarity only, no disrespect is intended.